[Filed January 12, 1886.]

## STATE *v.* LEWIS O'NEIL.

CRIMINAL LAW — CONTINUANCE — APPEAL — DISCRETION OF COURT.—The granting or refusing a continuance, in a criminal case, rests in the sound discretion of the court below, and unless the decision is manifestly wrong and arbitrary, involving an abuse of sound discretion, it will not be reversed on appeal.

SAME—AFFIDAVIT FOR CONTINUANCE.—In an affidavit for continuance, on the ground of the absence of a witness, it is not sufficient to state a belief that the attendance of such witness can be procured at the next term, but the facts and circumstances upon which such belief is founded must be set out.

CRIMINAL LAW—EVIDENCE.—Evidence that the accused, a month or more before the murder, had obtained a gun at a point quite distant from where the crime was committed, and had been seen carrying it at several intermediate points on his journey toward the place of the murder, is not rebutted by evidence that he had been seen without the gun at another point on the same journey still nearer the place of the murder, unless connected with evidence showing that he had disposed of the gun or parted with its possession so as to lose control over it.

SAME.—In a criminal case, particularly where life is involved, it is better that the court should adopt a liberal rather than a rigorous or technical rule in the receipt of evidence for the defense.

SAME—ERROR.—When the court, in refusing to allow a question to be asked by the accused, committed such an error as affected his rights, no matter how slight it may have been, the conviction must be set aside and a new trial granted.

SAME—INSTRUCTION TO JURY.—The phrase used in an instruction to the jury, "You may consider this as a circumstance in determining the guilt or innocence of the defendant," does not imply that innocence is a fact to be established.  WALDO, C. J., dissenting.

JACKSON COUNTY.    Defendant appeals.    Affirmed.

*H. K. Hanna* and *E. B. Watson*, for the Appellant.

A defendant charged with murder ought not to be forced into a trial until he has a fair opportunity to procure his evidence, and more especially so when an unreasoning community are threatening to tear down the jail and mob him.  It was error to refuse to postpone. (*People* v. *Diaz*, 6 Cal. 248; *People* v. *Dodge*, 28 Id.

445; *People* v. *Vermilyea*, 7 Cow. 383; *State* v. *McLane*, 15 Nev. 372; *United States* v. *Little*, 2 Wash. 159; *Adams* v. *Colton*, 3 Ill. 71; *Bradbury* v. *Dougherty*; 7 Blackf. 467; *Jacobs* v. *Finkel*, Id. 432; *State* v. *Klinger*, 43 Mo. 127; *Whiteworth* v. *State*, 30 Ga. 10.) The state having offered evidence of the possession of a gun by the accused prior to the murder, at different points between Jump-off-Jo and Ashland, it was error to exclude the question by the defendant: " State whether or not you saw the defendant leaving Medford for Ashland on his way from visiting his brother on Jump-off-Jo, about the 1st of October, 1884. If so, state whether he had in his possession a double-barreled shot-gun, or not." The evidence offered by the prosecution raised an inference of continuing possession of the double-barreled shot-gun. (2 Wharton's Law of Evidence, sec. 1284; *Martin* v. *Fishing Ins. Co.*, 20 Pick. 396; S. C., 32 Am. Dec. 390; *Kilburn* v. *Bennett*, 3 Met. 201.) The circumstances which the appellant offered to prove tended to rebut this inference. (*Ballou* v. *Humphrey*, 8 Kan. 219.)

*T. B. Kent, District Attorney*, and *W. H. Holmes*, for the State.

The question asked the witness John Frazer, "whether or not he saw the defendant leaving Medford for Ashland, on his way from visiting his brother on Jump-off-Jo, about the first of October, 1884, and if so, state whether he had in his possession a double-barreled shot-gun, or not," is too remote, and was properly excluded. Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves be presumed. (*United States* v. *Ross*, 92 U. S. 281–284; Lawson on Presumptive Evidence, 572.)

LORD, J. The defendant was indicted, tried, and convicted of murder. By the bill of exceptions, it appears

that on the day the defendant was called upon, and did plead not guilty to the indictment, he filed an affidavit and motion for the postponement of the trial, which the court refused to grant, and this is assigned as error. It is admitted that the granting or refusing of a continuance rests in the sound discretion of the court below, and that its determination ought not to be disturbed except for the best reasons. From the nature of things, the court below is placed in a much more favorable position to see the case in all its connections, and is therefore better fitted to decide the propriety of the application, than the appellate court; and unless the decision is manifestly wrong and arbitrary, involving an abuse of sound discretion, this court will refuse to reverse it. (*People* v. *Gaunt,* 23 Cal. 157; *People* v. *Williams,* 24 Id. 31; *People* v. *Dodge,* 28 Id. 448; *People* v. *Brown,* 46 Id. 103.)

The affidavit states "that C. M. Miller is a material witness; that he is now in Kansas City, state of Kansas; that his attendance cannot be procured at this term of court, but I am confident I can procure his attendance at the next term of the court." In this statement there are no facts set out from which the court can judge whether there is reasonable ground to believe that the attendance of the absent witness can be procured at a future day. It is not enough to say, "I am confident I can procure his attendance at the next term of the court;" but the facts or circumstances upon which such confidence or belief is founded must be set out, so that the court may look into and determine from them whether there is reasonable ground to believe that the attendance of the witness can be procured. "But if the affidavit," said Crockett, J., "had stated explicitly his belief that he could procure their personal attendance at the next term, it would still have been insufficient, unless the reasons for his belief had been set forth, to enable the court to

decide whether his belief was well founded; or, if he acted on the information of others, he should have stated the nature and particulars of the information. For the same reason, if a party states, on information and belief, that he can procure the personal attendance of a witness from a distant and foreign country, he should set forth the reasons for his belief and the nature of his information, that the court may decide whether or not there is reasonable ground to believe that the witness will attend. If continuances could be procured on such affidavits as this, the delays in the administration of justice would soon become intolerable. While great liberality should be extended toward persons charged with crime, in preparing the defense, and particularly in procuring the attendance of witnesses, the rule must not be so relaxed as to defeat the ends of justice." (*People* v. *Francis,* 38 Cal. 187; *People* v. *Ah Fat,* 48 Id. 63.) Where the absent witness resides in another state, remote from the place of trial, and in no wise amenable to the process of the court, the affidavit ought to set out the facts fully and explicitly, so as to satisfy the court, in furtherance of right and justice, that the delay ought to be granted.

It is next objected that the court erred in sustaining the objection made by the state, and excluding the answer of the witness John Frazer to this question: " State whether or not you saw the defendant leaving Medford for Ashland, on his way from visiting his brother, at Jump-off-Jo, about the first of October, 1884; if so, state whether he had in his possession a double-barreled shotgun, or not." It appeared that two days after the murder a double-barreled gun was found in a lot near the place where the murder was perpetrated, which, in some respects at least, answered to the description of a double-barreled gun which the defendant, a short time before, had procured from his brother at a place called Jump-off-

Jo, several miles distant from Ashland. The prosecution had established the fact of his procuring such a gun at his brother's, and of its being seen in his possession at different points on his return from his brother's, coming towards Ashland. The state showed that when the defendant passed Rock Point, Gold Hill station, and Blackwell, he was carrying such a gun, and, as it would seem, then making no effort to conceal it. The object of the question asked was to show that when the defendant was leaving Medford, which was subsequent in point of time, and nearer, and in the line of his route to Ashland, he had not in his possession a double-barreled shot-gun, and thus to some extent break the continuity, and repel the inference, of the facts sought to be established by the prosecution. This is the claim of the counsel for the defendant, and the inquiry is, whether the question is relevant, or not.

"Relevancy is that which conduces to the proof of a pertinent hypothesis. Hence it is relevant to put in evidence any circumstances which tend to make the proposition at issue more or less probable." (Whart. Ev., secs. 20, 21; Whart. Crim. Ev., secs. 23, 24.) In *Trull* v. *True*, 33 Me. 367, it was held that "testimony cannot be excluded as irrelevant which would have a tendency, however remote, to establish the probability or improbability of the fact in issue." It is a fundamental rule of evidence, applicable to all trials, that the evidence must be confined to the point in issue. Its sole object is to establish or disprove the disputed facts in issue between the parties; and any evidence not adapted to that end ought not to be received. "Had the case before us," said Cowen, J., "been one of improperly admitting evidence which bore in the least on the general question of guilt or innocence, no doubt a new trial should be granted." (*People* v. *Wiley*, 3 Hill, 194.) In all such

cases, "the single question presented to the court is one
of relevancy or pertinency, and not one of force or value
as testimony. No matter how slight the inference may
be that can be drawn from a particular fact, it is compe-
tent to be considered as an element of the entire concrete
of facts from which the deduction is to be made." (*Scott*
v. *State*, 56 Miss. 287.

If, therefore, the court, in refusing to allow the ques-
tion asked to be answered, committed such error as
affected the rights of the accused, however slight it may
have been, the conviction must be set aside and a new
trial granted. The controlling and important inquiry,
then, is, Was the question excluded relevant? For the
better understanding of this inquiry, some preliminary
statement is necessary. It appears from the record that
there was evidence tending to prove that, previous to the
murder, the defendant had maintained improper rela-
tions or intimacy with the wife of the deceased, and had
made threats against his life; that after the murder a
gun was found in a lot near the place where the murder
was committed; that the person who had committed the
deed had fled by an unfrequented way, leaving the im-
print of his boots in the soft earth, which, by trial, were
found to fit the boots worn by the defendant. Upon this
state of facts, it became important for the state to trace
the gun into the hands or possession of the defendant.
For this purpose the state proved that a month or more
before the murder was committed, the defendant had
visited his brother at a place called Jump-off-Jo, some
fifty miles distant from Ashland, and while there pro-
cured from him a double-barreled shot-gun, which cor-
responded or answered to the description of the gun
found near the place of the murder; and, to further cor-
roborate and fix that procurement and possession of the
gun by the defendant, the testimony, as to the interme-

diate points on his return, was introduced and admitted. The state had thus established the fact of the possession of the instrument. It had traced the gun into the hands of the defendant, with the power to control it, and it became necessary for the defendant to get rid of that possession, unless he could contradict the fact of procurement, or show the gun procured was another or different gun. As nothing of this sort was attempted, it only remained to introduce evidence tending to show that subsequently the defendant had parted with the possession of the gun, and thereby lost control over it, thus rendering improbable the inference sought to be established by the prosecution; and this is precisely, in effect, the contention of counsel for the defendant. In the written brief it is said that, to rebut the evidence offered, the object of the evidence rejected was to show that the defendant "was not in possession of the gun—had parted with it." It is not pretended that the evidence sought to be elicited by the question would have tended to contradict the fact of his procurement and possession of the gun as proved by the state, but it is insisted that it tends to prove that, at a time subsequently and nearer the place where the murder was committed, the "defendant was not in possession of the gun—had parted with it"— and in this way would have tended to rebut the inference of the facts as proved by the state. If this is the effect of the proposed evidence, or the proper inference to be drawn from it, then it was relevant, and its rejection was error, which affected the rights of the accused, and the conviction ought to be set aside. But in my judgment, this is not the effect of the evidence proposed to be elicited by the excluded question. It simply proposed to show that, at the time when the witness saw the defendant leaving Medford, he did not have in his possession a double-barreled gun; but this by no means implies or

justifies the inference that he had disposed of the gun, or parted with its possession, so as to lose control over it, or that he was not in fact in the virtual possession of it—only that he was not in the visible possession of the gun at the particular time the witness saw him. From the nature of the case, it is not to be supposed that the defendant was, at all times after he had procured the gun, in the open, visible possession of it. There would necessarily be many times when this would not nor could be the case; and if he had the murderous design in his heart which it is claimed the facts indicate, the gun and all traces of it would be purposely out of his immediate or visible possession, but subject to his control, as he neared Ashland, where the deed was to be perpetrated. As the facts stood, to rebut or render less probable the inference arising from the facts as proved by the prosecution, the evidence proposed, to be relevant, should have tended in some degree to show that the defendant had parted with or in some way disposed of the possession of the gun, or tendered some circumstance, however originating, of similar import or effect, which involved the inference of a loss of control or dominion over it. As a circumstance for the purpose offered, the evidence proposed by the question fell short of the disputed issue, and needed the aid of some additional fact, either to have been previously proved, or to have been followed by an offer of subsequent proof, to render it relevant and material. For instance, if there had been evidence already submitted by the defense tending to show that the defendant, before reaching Medford, or while there, had sold the gun, or in some manner parted with the possession, whereby it passed into other hands, or, by reason of the absence of witnesses or other cause, offered to follow up the question asked by some such equivalent proof before the evidence closed, then the evi-

dence proposed by the question would have been relevant,. not only as corroborative of the fact that the possession had passed into other hands, but as strengthening its: rebutting effect.

It is a mistake to suppose, as suggested by counsel,. that evidence of the disposal of the gun to another, and the evidence proposed by the question, only differs in degree; the latter fails to raise the material inference implied in the former. It seems to belong to that class of evidence, often proposed, which approaches, but does not exactly reach, the boundary line dividing the relevant and irrelevant, but which, particularly in cases of' this sort, it is freely admitted it is better and safer to receive than to reject. It is always best, in cases of' a criminal character, particularly where life is involved, that the court should adopt a liberal rather than a rigor-- ous or technical rule in the receipt of evidence for the defense. "Whenever there is any doubt of the ques-- tion," said Baldwin, J., "or rather, whenever the evidence proposed by the defense is not plainly admissible,. it is better to let it go in, since, in nine cases out of ten,. a single equivocal fact, of doubtful bearing on the case,. would have no effect upon the judgment of the jurors,. who are usually disposed to pass, and do pass, upon the· general merits." (*People* v. *Williams,* 18 Cal. 194.) And. this seems to be the uniform language of the authorities.

In *Mack* v. *State,* 48 Wis. 287, Taylor, J., in delivering· the opinion of the court, said:

"Though it be true that the judge, upon the trial of a. criminal case, should not permit the time of the court to· be wasted in hearing evidence which is entirely disconnected with and immaterial to the real issues, and which may mislead and confuse the jury, yet, on the other hand, for the furtherance of justice, and the protection of the state, a liberal rule should be adopted in the·

admission of evidence, and no evidence offered by the accused should be rejected when its immateriality is not clearly apparent."

Again: " It seems to us that in every aspect of the case it is better for the state, as well as for the accused, that the trial court should adopt a liberal course in the receipt of evidence offered by the defense; and that if the court errs, it should err in liberality, rather than in the application of technical and rigorous rules, excluding all evidence which is not clearly seen to be material."

The next objection is to the following language of the court, added to an instruction: " Then you may consider this as a circumstance in determining the guilt or innocence of the defendant." It is not thought, as argued, that the court meant, or the jury understood, by this language, that innocence was to be established. Nor does the language imply such a construction; but that this was a circumstance for the jury to consider in determining whether the defendant was guilty or not guilty. It is not innocence, but guilt, that is to be proved or established in a criminal proceeding. But whether the defendant is guilty or not guilty, the jury are to determine from the facts and circumstances of the case. Cases may undoubtedly occur where the jury do not believe the defendant innocent, and yet acquit him, because the evidence fails to establish his guilt in their minds beyond a reasonable doubt.

As these are the only matters that we have deemed it necessary to consider, it follows that the judgment must be affirmed.

THAYER, J. (concurring). The question asked the witness Frazer, the ruling upon which is claimed to have been erroneous, was the following: " State whether or not you saw the defendant leaving Medford for Ashland,

on his way from visiting his brother at Jump-off-Jo, about the first of October, 1884; if so, state whether he had in his possession a double-barreled shot-gun, or not." The question was objected to, and the objection was sustained. This court is of the opinion that the Circuit Court could very properly have allowed the witness to have answered the question, as the state has shown the defendant to have had the gun he obtained of his brother at two or three intermediate points between Jump-off-Jo and Medford; that it might be a circumstance tending to show that the defendant did not take the gun on to Ashland on the occasion referred to; but it is not considered that the ruling referred to was a material error. That the defendant procured the gun from his brother, in connection with the proof tending to show that it was the same gun found near the place of the homicide, was a very important circumstance in the case. But that he was seen to have had it at Rock Point, Gold Hill station, and Blackwell, was comparatively unimportant. That he had the gun when it was last seen in the possession of any one, was the fact that made that circumstance important. The defendant had an undoubted right to show that he disposed of the gun at Medford, or elsewhere, but the question had no tendency to show that. The witness, in his answer to the question, would have had no right to state anything except what he saw; and could, if he had been permitted, only have stated that he did not see the defendant have the gun in his possession at Medford. That would not have proved a disposal of it, nor have been a necessary preliminary inquiry to the making of such proof. I am inclined to believe that a responsive answer to the question, of the most favorable character, would have been quite as damaging as beneficial to the defendant. If the witness had answered that he did not see the defendant

have any gun in his possession while at Medford, it still might have been inferred, if it were the same gun before referred to, that he had secreted it during his stay at that place. I cannot see that the ruling upon the objection to the question, conceding it to have been erroneous, could have injured the defendant in the least. It did not controvert the evidence that he borrowed the gun, and of his having had it at the other places. The most that could have been claimed from the evidence, if the witness had answered as suggested, would be that the defendant did not openly carry the gun to Ashland, if he carried it at all. Assuming that the gun found near the spot of the homicide was the same one that the defendant obtained from his brother made a strong circumstance against him, unless he proved that he had, prior to that time, disposed of it to some other party, and I am unable to discover how the proof offered could have weakened it in any degree.

The conclusion of the court that the error was harmless is formed, not from any other evidence in the case, but from the absolute weakness of the proposed evidence, viewed in the light of the general facts and circumstances disclosed by the record. This court is not unmindful of the fact that the defendant was on trial for his life, nor unconscious of its duty to resolve, in so important a matter, every doubt upon the law in his favor. I am quite certain that if the court thought or believed that the evidence offered would, if it had been received, have tended, in the least degree, to have established the defendant's innocence, or to refute the proof of his guilt, a new trial would be ordered. But the law under which the court is authorized to review adjudications in criminal proceedings provides expressly that it must give judgment, without regard to the decision of questions which were in the discretion of the court below, or to technical errors, de-

fects, or exceptions, which do not affect the substantial rights of the parties. (Crim. Code, sec. 246.) The present case, however, affords a proper occasion to express our emphatic disapprovol of the application, in criminal cases, of a hard and fast rule in determining upon the admission of evidence which it is claimed will tend to the exculpation of the accused, and to discourage, as far as we may, illiberality in the admission of testimony, especially in cases of so grave a character as the one under consideration. No testimony having any bearing upon the issues involved in the charge or raised at the trial should be excluded. The person accused of an offense, however guilty in fact he may be, is entitled to a fair and impartial trial, and it is the judge in his private character, and not the law, which condemns, when its forms and rules have been disregarded. But this court has only the right and power to correct those errors which affect the substantial rights of the party, and it is because the error complained of herein is not, in the opinion of a majority of the court, of that character that the judgment of the court below must stand.

WALDO, C. J. (dissenting). A gun was found near the scene of the murder, with which the murder was supposed to have been committed. The state had the right to show that the gun belonged to the prisoner, or to trace it to his possession. Where a prisoner was seen on the day after the burglary, near the place of the burglary, and tools with which the burglary was supposed to have been committed were found near by shortly afterwards, the prosecution was permitted to show that these tools came from the home of the prisoner, although that home was 200 miles from the place of the burglary. "Proof that the implements used came from his home was a circumstance very proper to be submitted to the jury in con-

necting him with the crime." (*People* v. *Larned*, 7 N. Y. 452.)

In this case, to connect the prisoner with the gun, the state had introduced evidence to show that about the first of October, 1884, the murder having been committed on the evening of November 20th following, the prisoner made a journey from Grave Creek or Jump-off-Jo Creek to Ashland, and was seen at three different places on that journey carrying a double-barreled shotgun, described as resembling that found near the scene of the murder. No question has been made on the sufficiency of the evidence of the identity of the gun. The only question here is on the rejection of the evidence offered on behalf of the prisoner to rebut this evidence on the part of the state. The object of the evidence on the part of the state was to trace the gun to the possession of the prisoner at Ashland. An isolated fact of possession at either of the places named could not, of course, be rebutted by evidence that he did not afterwards have the gun at some other place. But that is not this case. The principle of this case is this: J. S., making a journey from A to G, is seen at B, C, and D, having a gun in his possession, and carrying it with him as he travels. At F, on that journey, he is traveling without the gun. The gun is afterwards found at G, and J. S. is accused of using it there to commit a murder. As proof of his possession of the gun, his journey from A to G is introduced, and his possession of the gun at B, C, and D shown. In rebuttal, evidence is offered that on an after-part of that journey, to wit, at F, J. S. was traveling without the gun. It may be noted here that it is not shown that J. S., after his arrival at G, on that journey, ever after came back to the place where he was last seen with the gun. To state the case in another way: J. S., on a certain day, is seen near the

right bank of the Columbia River, traveling toward a point on the other side, and carrying a gun. A few days afterwards, the gun is found on the other side of the river, near the scene of a recent murder. J. S. is arrested for the murder. The state endeavors to connect him with the gun, by showing his possession as above beyond the Columbia. In rebuttal, J. S. offers to show that he crossed the river on that day, and on that journey, without the gun. Now, if it could be certainly shown that J. S. never again, after that time, crossed and recrossed the river, this evidence would perfectly rebut the evidence on the part of the state. The possibility that he may have returned and brought the gun over at another time weakens the otherwise conclusive effect of the evidence, but cannot destroy its effect altogether, without the aid of a conclusive presumption that he did return, which would be something new in the law, or possibly something old, but unheard of since the time of the Stuarts, of which Mr. Justice Stephen, in his history of the criminal law of England, says: "A criminal trial in those days was not unlike a race between the king and the prisoner, in which the king had a long start, and the prisoner was heavily weighted."

A gun carried by a traveler in an early stage of a continuous journey from one given point to another, it might be supposed, was carried by him to the end. There ought to be a right to rebut this supposition, by showing that, at a point on the route beyond any point at which he is shown to have been carrying the gun, and before the point of destination was reached, he was pursuing his journey without it. Such evidence in rebuttal is precisely of like character to that of the prosecution. "It would seem but even-handed justice that if one party should give evidence in proof of some point of his case, of a particular character, not strictly compe-

tent in point of law for the purpose for which it was offered, the opposite party should be allowed the benefit of proofs of like character in disproof of the fact in issue." (Woods, J., in *Furbush* v. *Goodwin,* 2 N. H. 448.)

In this case, the evidence of the state was competent. Much more, then, ought evidence of like character, offered by the defendant to rebut it, have been admitted.