Argued 23 December, 1901 ; decided 20 January, 1902.

## LINN COUNTY *v.* MORRIS.

[67 Pac. 295.]

TRIAL—CONTINUANCE—DISCRETION.

1. Trial courts have a large discretion in passing upon motions for continuances, but the authority so granted must be exercised according to legal principles and in such a way as to promote substantial justice : *Hanthorn* v. *Oliver,* 32 Or. 57, cited and applied.

REVIEW OF ORDER REFUSING A CONTINUANCE.

2. During an action against the second term sureties of a county treasurer to recover for alleged defalcations there were indictments pending against him,—one for failing to account for moneys coming into his hands during the first term. A continuance was asked until the indictments were disposed of, because the treasurer refused until then to testify concerning such moneys. On trial the court found that at the close of the first term the treasurer had in his possession the sum of $1,845, and, "in the absence of the contrary, and on the presumption that he did his official duty, the court finds that he paid said sum to himself as his own successor" ; and this $1,845 formed part of the amount for which judgment was rendered against the sureties. *Held,* that it was error to refuse the continuance.

From Linn :    GEO. H. BURNETT, Judge.

This is an action by Linn County, a public corporation, to recover from its late treasurer and his sureties the amount of his alleged defalcation. The complaint alleges, in substance, that the defendant P. G. Morris, having been elected treasurer of Linn County, Oregon, for a term of two years beginning July 6, 1896, executed prior thereto an official undertaking, with his codefendants as sureties, conditioned that if he should not faithfully keep, account for, and pay over, according to law, all moneys that might come into his hands by virtue of his office, they or either of them would pay the State of Oregon $50,000, which bond was duly approved; and that of the money received by him as such treasurer he neglected and refused to pay over to his successor the sum of $3,422.53. The answer denies the material allegations of the complaint, and avers that said sum of money belonged to the cities and to the school and road districts of said county, with which Morris had fully accounted therefor. The allegations of new matter in the answer having been denied in the reply, the defendants, on November 27, 1899, moved the court to postpone the trial until the next term, the basis of such motion being the affidavit of the defendant L. Flinn, which is to the effect that the defendants could not safely go to trial at the term then in session on account of their inability to secure the testimony of the defendant Morris, against whom two indictments were returned June 27, 1899, by the grand jury of said county,— one for converting to his own use and failing to account for money that came into his possession by virtue of his office during his first term, or prior to July 6, 1896; and the other for the same offense, alleged to have been committed during his second term, ending July 5, 1898,—which indictments are still pending in said court; that it is alleged in the complaint herein that Morris received, during his second term, of plaintiff's money, the sum of $252,142.01, and accounted for and paid over to his successor in office only the sum of $248,719.48, leaving unaccounted for a remainder of $3,422.53, which he converted to his own use; that of the sum of $252,142.01 so received $29,768.68 came into Morris' possession during the

first term, and was paid over to himself, as his own successor, at the beginning of his second term, to be accounted for according to law; that the defendants expect to prove by Morris, and he will testify, when said indictments are finally disposed of, that during his first term he paid out, according to law, all moneys that came into his hands by virtue of his office, except the sum of $19,931.59, which was deposited in the banks at Albany, in said county, and which sum is the only money that came into his hands during his second term from that received at the first term; that Morris will further testify that he fully accounted for all moneys that came into his possession, as said treasurer, during his second term, and that any apparent discrepancy that may be disclosed by an inspection of the books kept by him during that term occurred while he was in office the first term; that affiant had talked with one of Morris' attorneys in said criminal actions, and was informed by him that his client was entitled to claim an exemption from testifying at the trial of this action in respect to the facts stated in this affidavit upon the ground that evidence thereof given by him might tend to subject him to punishment for a felony, and that affiant had also talked with Morris, who informed him that he should claim such privilege, and he would refuse to testify as to what sum of money came into his hands at the beginning of his second term from the money received during his first, or when the apparent deficiency complained of occurred; that the defendants know of no other witness who can testify in relation thereto, nor is there any other witness by whom or evidence by which said facts can be proved; that, if the trial of this cause is continued until said criminal actions are disposed of, the defendants will produce Morris, who is a resident of said county, and he, as their witness, will testify as to said facts; that his testimony is material to the defense, and the defendants cannot safely go to trial without it, and, if compelled to do so, an injustice will be done them; and that this affidavit is not made for delay, but that justice may be done.

40 OR.—27.

The motion for a continuance having been overruled, a trial was had without the intervention of a jury, and from the testimony taken the court found the facts as follows:  " (1) On or about June 29, 1896, and prior to the entry of the defendant P. G. Morris upon the discharge of the duties of county treasurer of said Linn County for the term mentioned in the plaintiff's complaint, and for the purpose of qualifying said P. G. Morris to act as such county treasurer, the defendants duly delivered the undertaking set forth in the plaintiff's complaint to the county court of Linn County aforesaid, and said undertaking was then and there duly approved by said county court, and filed in the manner provided by law.  (2) The defendant P. G. Morris was the duly elected, qualified, and acting county treasurer of said Linn County for the term ending on the first Monday of July, 1896; that being his first term in office as such county treasurer. (3) At the close of the first term of said P. G. Morris as such county treasurer, besides money deposited in banks and other money, all being the property of the plaintiff, the defendant P. G. Morris had in his possession and custody as such county treasurer the sum of one thousand eight hundred and forty-five and twenty-six one-hundredths dollars ($1,845.26) of money not otherwise accounted for, the same and the whole thereof being then and there the property of the plaintiff. (4) In the absence of the contrary, and on the presumption that said P. G. Morris did his official duty as such county treasurer in respect to the sum of one thousand eight hundred and forty-five and twenty-six one-hundredths dollars (1,845.26) mentioned in the third finding of fact herein, the court finds as a fact that the defendant P. G. Morris paid said sum of one thousand eight hundred and forty-five and twenty-six one-hundredths dollars to himself, as his own successor in office, and had the same in his possession as such county treasurer of Linn County, Oregon, when he took office for his second term as such county treasurer.  (5) At the close of his second term of office as such county treasurer there was in the possession and custody of said P. G. Morris as such county treasurer the

sum of twenty-three thousand five hundred and eighty-eight and one one-hundredths dollars ($23,588.01), the same and the whole thereof being the property of the plaintiff and consisting of the following items, viz.: Money afterwards paid to his successor in office, $20,177.21; money not otherwise accounted for in the first term, and in his hands at the commencement of his second term, $1,845.26; money not otherwise accounted for in second term, $1,565.54,—amounting, as aforesaid, to $23,588.01. (6) Prior to the commencement of this action the defendant P. G. Morris paid to his successor in office of the money of the plaintiff remaining in his possession and custody at the close of his second term of office, as set forth in the fifth finding of facts herein, the sum of twenty thousand one hundred and seventy-seven and twenty-one hundredths dollars ($20,177.21), and no other or greater sum. (7) Of said sum of twenty-three thousand five hundred and eighty-eight and one one-hundredths dollars ($23,588.01), in the possession and custody of said P. G. Morris as such county treasurer at the close of his second term of office, there remains not accounted for by said P. G. Morris, or any of the defendants, a balance amounting to the sum of three thousand four hundred and ten and eighty one-hundredths dollars ($3,410.80), the same being the property of the plaintiff; all of which the defendant P. G. Morris converted to his own private use at the close of his second term of office, and ever since then has failed, neglected, and refused, and does now still fail, neglect, and refuse, to pay or account for said sum of three thousand four hundred and ten and eighty one-hundredths dollars ($3,410.80), or any part thereof, as required by law, or to pay the same or any part thereof, to the plaintiff or to his successor in office." Judgment having been rendered upon these findings, the defendants appeal.　　REVERSED.

*Messrs. Hewitt & Sox,* for appellants.

*Messrs. J. N. Hart,* District Attorney, *H. C. Watson, L. L. Swan,* and *Percy R. Kelly,* for respondent.

Mr. Justice Moore, after stating the facts, delivered the opinion of the court.

1. It is contended by defendants' counsel that the court erred in overruling their motion for a continuance, and that compelling them to go to trial before the indictments against Morris had been disposed of was a denial of justice. While the statute permits a court, upon a proper showing, to postpone the trial of a cause on account of the absence of evidence (Hill's Ann. Laws, § 179), the rule is well settled in this state that the granting or refusal of a motion for a continuance is discretionary, and will not be reviewed on appeal unless it satisfactorily appears that there has been an erroneous exercise of judicial authority: *State* v. *O'Neil,* 13 Or. 183 (9 Pac. 284); *State* v. *Hawkins,* 18 Or. 476 (23 Pac. 475); *State* v. *Howe,* 27 Or. 138 (44 Pac. 672); *State* v. *Fiester,* 32 Or. 254 (50 Pac. 561); *State* v. *Wong Gee,* 35 Or. 276 (57 Pac. 914); *Lew* v. *Lucas,* 37 Or. 208 (61 Pac. 344). In *Mitchell* v. *Campbell,* 14 Or. 454 (13 Pac. 190), Mr. Justice Strahan, in speaking of the exercise of such authority, and the supervision thereof by an appellate court, says: "In ordinary cases the court will not interfere with the discretion of the trial court in matters of practice before it. The law has wisely vested those courts with very large discretionary powers in such matters; but it is a judicial discretion, not to be capriciously or oppressively exercised." The judicial discretion that is not subject to review on appeal is such an exercise of authority in the mode of proceeding for the enforcement of rights or the redress of wrongs as is reasonably designed, according to fixed legal principles, to promote substantial justice: *Powell* v. *Dayton S. & G. R. R. Co.* 14 Or. 22 (12 Pac. 83); *Thompson* v. *Connell,* 31 Or. 231 (48 Pac. 467, 65 Am. St. Rep. 818); *Hanthorn* v. *Oliver,* 32 Or. 57 (51 Pac. 440, 67 Am. St. Rep. 518); *Coos Bay Nav. Co.* v. *Endicott,* 34 Or. 573 (57 Pac. 61). In *Hyde* v. *State,* 16 Tex. 445 (67 Am. Dec. 630), it was held that evidence produced at the trial will be considered in reviewing a refusal to grant a continuance, the court saying: "But in considering the case upon appeal, where the motion for a new

trial brings before us a statement of the evidence upon the
trial, we do not feel bound to shut our eyes wholly to the facts
of the case in considering whether the judgment ought to be
reversed for the refusal of the court to grant a continuance.
If, upon the trial, there had appeared to be cause to appre-
hend that a continuance was improperly refused, a new trial
must have been granted. But if, on the contrary, it very satis-
factorily appears that the application for a continuance could
not have been well founded in fact, it must afford an addi-
tional reason for refusing a new trial, or to reverse the judg-
ment on that ground.''

2. In the light of this rule we will examine the findings of
fact as an epitome of the evidence, to determine whether any
error was committed in refusing to postpone the trial. The
court found that Morris, as treasurer, had in his possession at
the close of his first term, in addition to the money belonging
to Linn County, then on deposit in the banks, the sum of
$1,845.26, and that, in the absence of any evidence tending to
show that he had converted this sum to his own use during
his first term, the court, by invoking the disputable presump-
tion that official duty had been regularly performed (Hill's
Ann. Laws, § 776, subd. 15), deduced the fact that Morris paid
this sum over to himself as his successor in office. The court
further found that he failed to account for the sum of
$3,410.80, of which $1,845.26 of the money so received during
his first term formed a part. The bill of exceptions, in ex-
plaining the method of reaching this conclusion, is as follows:
''The plaintiff, to further sustain the issues on its part, intro-
duced the books and accounts kept by the said P. G. Morris as
such treasurer during the first term of office, showing that at
the close of his said first term the said Morris, as such treas-
urer, besides the money deposited in the banks and other
moneys, all being the property of the plaintiff, had in his
possession and custody as such treasurer the sum of $1,845.26,
not otherwise accounted for, the same being the property of
the plaintiff. There was no other evidence, except that de-
rived from said books, as above stated, showing or tending

to show that the said sum of $1,845.26 was or was not turned over by the said Morris to himself as his own successor at the beginning of his second term of office as such treasurer of Linn County, Oregon.'' If Morris' codefendants had been sureties on his first official undertaking, no prejudice could have resulted from the court's refusal to grant a continuance, for, having covenanted to answer for the principal's default, the sureties could have no legal cause to complain on the ground that their obligation was being enforced. Flinn's affidavit shows that, if the indictments against Morris were disposed of, he would testify that the apparent defalcation occurred during his first term. The transcript discloses that the defendants called Morris as their witness, and propounded to him a question in regard to this matter; but he, claiming the privilege which the law guaranties in such cases, was excused by the court from answering the interrogatory. It will thus be seen that a possible injustice has been done to the codefendants herein, whereby they are adjudged to pay a charge of $1,845.26 which should have been imposed upon the sureties on Morris' first official undertaking. The district attorney had charge of the criminal action against Morris, and also conducted the trial of this action. He may have thought that by trying this action first he could obtain evidence with which he might secure convictions on the indictments, and for this reason adopted the method pursued; but by doing so a great injustice may have been inflicted upon the codefendants.

In *State* v. *Harras*, 22 Wash. 57 (60 Pac. 58), it was held that when a person charged with the commission of a crime asked for a continuance on the ground that the evidence of one convicted of perjury was important for the defense, and that an appeal was pending from such conviction, it was error to deny a continuance until the appeal was determined. Mr. Chief Justice GORDON, speaking for the majority of the court, in deciding the case, says: ''But we cannot overlook the fact that appellant has been deprived of the benefit of the testimony of a witness, not because of any act for which he is responsible, but because of an illegal judgment of conviction against such

witness. Manifestly, he has not had the benefit of those rights
which are vouchsafed to him by the constitution, among which
is the right to have witnesses examined in his own behalf. He
has committed no act by which the right has become forfeited.
The error in the *Guse Case* was not of his making, nor is it for
this court to say that the testimony of Guse would have availed
the defendant nothing. If he should testify before the jury
as set forth in the affidavit for a continuance, and the jury
should believe his testimony, it would entitle the appellant to
acquittal; and the question of the credibility of Guse would
be one resting solely with the jury. Here is a condition never
contemplated by the legislature when it specified what should
constitute a sufficient cause for continuance. If the defendant
has been deprived of the right to make a defense through no
failure or neglect of his own, it would be a shame and a re-
proach to the law to hold him accountable for the law's mis-
take. The case involves something more than a mere question
of the exercise of discretion by the trial judge in refusing an
application for a continuance. It involves the larger question
of a defendant's right to have witnesses examined in his be-
half. It involves the constitutional right of fair trial. Better
—far better—that the course of justice be slow, than that in
making haste we should break down those safeguards which
experience has shown to be necessary for the welfare and pro-
tection of the rights of the citizen. The argument of the prose-
cution does not meet the question. It is not enough that the
record should satisfy us of the actual guilt of the prisoner.
The duty is upon the state to demonstrate his guilt by legal
evidence, upon a fair trial, where no constitutional or legal
right is denied him.'' Flinn's affidavit shows that Morris was
the only person by whom the defendants could expect to prove
that the entire defalcation did not occur during his last term
of office. Fear of conviction under the indictments evidently
restrained him from testifying in relation to this important
matter, and, as the district attorney had charge of the crim-
inal actions, and was apparently holding the indictments in
abeyance until this action was tried, we think the court exer-

cised its authority erroneously in not postponing the trial herein until the indictments were disposed of.

It follows from this conclusion that the judgment is reversed, and a new trial ordered.                                    REVERSED.