Argued February 27, affirmed March 25, 1924.

# STATE *v.* FRANK PUTNEY.

(224 Pac. 279.)

**Criminal Law—Motion to Postpone Trial Held Addressed to Discretion of Court.**

1. In prosecution for statutory rape, a motion to postpone the trial of a cause until the birth of prosecutrix's baby to determine parentage was addressed to the sound discretion of the trial court under Section 1513, Or. L.

**Criminal Law—Ruling on Motion to Postpone Cause not Disturbed in Absence of Abuse of Discretion.**

2. In prosecution for statutory rape, the court's ruling on motion to postpone trial under Section 1513, Or. L., that birth of child to prosecutrix might determine parentage, will not be disturbed in absence of abuse of discretion.

**Criminal Law—Refusal to Postpone Trial for Absence of Witness Held not Abuse of Discretion.**

3. In a prosecution for statutory rape, court's refusal to postpone the case for absence of other man with whom defendant claimed prosecutrix had been intimate, and who defendant claimed was the cause of her pregnancy, *held* not abuse of discretion, where other man was in other jurisdiction, in view of improbability of other man returning to testify to the commission of a felony by himself.

**Criminal Law—Exclusion of Evidence That Defendant's Motion for a Continuance had Been Overruled Held not Error.**

4. Refusal to permit defendant to prove at the trial that his motion for a continuance had been overruled *held* not error.

**Criminal Law—Evidence Held to Establish Foundation for Admission of Notes from Defendant to Prosecutrix.**

5. In prosecution for statutory rape, evidence as to notes written to prosecutrix *held* admissible as against contention that notes were not proved to have been written by defendant.

**Criminal Law—Testimony That Defendant Committed, or Attempted to Commit, Rape on Female Other Than Prosecutrix, Held not Admissible.**

6. In a prosecution for rape, evidence tending to prove that defendant committed, or attempted to commit, a like offense upon one other than prosecutrix is not admissible.

---

3. Continuance of trial to procure witness who is beyond jurisdiction, see note in **L. R. A.** 1918E, 527.

5. Letters identified by prosecutrix as corroboration of her testimony to prove rape, see note in 49 **L. R. A.** (N. S.) 1198.

6. Admissibility of evidence of other crimes in prosecution for rape, see notes in 8 **Ann. Cas.** 459; 18 **Ann. Cas.** 442; **Ann. Cas.** 1915D, 164; 62 **L. R. A.** 314, 322, 329; 48 **L. R. A.** (N. S.) 236.

Criminal Law—Testimony of Prosecutrix in Statutory Rape Case
     That Defendant Told Her That He had Been Familiar With Other
     Girl Held Admissible.

7. In a prosecution for statutory rape, prosecutrix's testimony
that defendant told her that he had been familiar with some other
girl of tender years and that "he never got her into trouble," *held*
admissible as *res gestae*, as against contention that such testimony
constituted evidence of the commission of other crimes.

Jury—Constitutional Right to "Jury Trial" Did not Entitle a De-
     fendant to a Trial by a Jury Composed of Twelve Males.

8. The constitutional right to a "jury trial" did not entitle a
defendant to a trial by a jury composed of twelve males.

Constitutional Law—Jury—Statute Giving Women Right to Claim
     Exemption from Jury Service Held not Unconstitutional.

9. Section 991, Or. L., as amended by Laws of 1921, Chapter
273, Section 6, paragraph 11, giving women the right to claim
exemption from jury service, *held* not violative of Constitution,
Article I, Section 20, providing that no law shall be passed grant-
ing to any citizen or class of citizens privileges or immunities
which upon the same terms shall not equally belong to all citizens.

Criminal Law—Statute Giving Women Right to Claim Exemption
     from Jury Duty Held not Violative of Defendant's Right to
     Speedy Trial.

10. Section 991, Or. L., as amended by Laws of 1921, Chapter
273, Section 6, paragraph 11, giving women the right to claim
exemption from jury service, *held* not violative of defendant's
right to a speedy trial under Constitution of the United States,
Amendment 6, on theory that women by claiming exemption could
prolong the trial, in view of Oregon Constitution, Article I, Sec-
tion 10, and Section 10 of such statute of 1921.

Statutes—Title of Amendatory Jury Law Held Sufficient.

11. Laws of 1921, Chapter 273, entitled an act "to amend
Sections 984, 986, 987, 988, 990, 991, 995, 997, 1399 and 1520, Or.
L., relating to juries and referring this act to the people of the
State of Oregon," relating in the body of the act to service on
juries by women, *held* not violative of Constitution, Article IV,
Section 20, requiring every act to embrace but one subject to be
expressed in the title, making it apparent that the legislators
knew what they were voting for.

Statutes—Constitutional Provision as to Title of Act, Though
     Mandatory, Should be Liberally Construed.

12. Constitution, Article IV, Section 20, providing that every
act shall embrace but one subject to be expressed in the title, is
mandatory, but should be liberally construed so as not to impede
legislation.

---

8. Constitutionality of statute entitling women to be jurors,
see note in L. R. A. 1918E, 773.

Conferring right of suffrage upon women as qualifying them as
jurors, see notes in 5 A. L. R. 525; 16 A. L. R. 1154; 26 A. L. R.
356.

From Multnomah: George W. Stapleton, Judge.

Department 2.

Defendant, Frank Putney, appeals from a judgment convicting him of the crime of rape. He was indicted on March 19, 1923. Upon arraignment he entered his plea of not guilty. Thereafter the cause was set down for trial on April 6, 1923. On March 31, 1923, defendant filed a motion for continuance upon the ground that—

"the defendant cannot safely proceed to trial at this time on account of the absence of material testimony which, on account of conditions existing he is unable to secure."

The case was allowed to pass without an order of the court until May 3, 1923, when the defendant again filed a motion for continuance. The first motion was based upon an affidavit denying that he had carnally known Elizabeth Wolfe and setting forth that he could not safely proceed to trial on the date set—

"for the want of and on the grounds of the absence of material testimony which I am unable to procure and which cannot be present or had on that date; that I have been reliably informed, and so state the truth to be that said Elizabeth Wolfe is now pregnant. If such is true, and this case is continued until said child is born, then, in that event, it will be of a dark blood, to wit, of a foreign race, and I know personally that Elizabeth Wolfe has admitted that she has had intercourse with a Filipino, but I do not know his present whereabouts and cannot produce at the trial on the sixth day of April, 1923, and I understand and have been so informed that said Filipino is now somewhere in the State of California. I do not know his name, except he was

called 'Billy.' If this trial is continued, I can clearly establish my innocence of said charge.''

The second affidavit is similar to the above, with the following additional matter:

''That Elizabeth Wolfe informed me prior to my arrest and indictment that her present condition of pregnancy was due to acts of sexual intercourse on the part of the said Filipino boy above referred to; that I have made inquiries of several persons to learn his whereabouts but without avail; that the evidence that said Filipino boy is the father of said unborn child * * can be had and produced in this court within six months' time * * .''

The court overruled the motion for continuance, and upon trial by a jury composed of six men and six women, the defendant was found guilty as charged in the indictment.

Upon his trial the defendant, among other things, testified:

''Q. Frank, did the girl ever come to you after she was in difficulty?

''A. She didn't come to me, no. I went to see her mother. I went to call on them. I lived there about a year with them and when they moved to their new place I went to call on them and she told me about it. * * It was some time the latter part of December.

''Q. How did you find it out?

''A. She wouldn't talk or anything. She had always been laughing and talking with me when I was around her, and she was grouchy about something, and I asked her what she was sore about, and she said, 'Nothing'; that she was in bad, that she had to be careful, and I says, 'You are in bad, how?' and she told me that she had been fooling around and got in bad.

''Q. Did she tell you with whom she had been fooling?

''A. Yes; I asked her who done it, tried to get her to tell me who done it, and she said it was 'Billy,'

and the only one that I knew of that name was a
Filipino and I judged it was the Filipino.''

The defendant appeals to this court, assigning
error of the court in refusing to allow his motion
for continuance, in the reception and in the rejec-
tion of proffered testimony, and in overruling de-
fendant's motion to quash the panel of jurors.

AFFIRMED.

For appellant there was a brief over the names of
*Mr. D. C. Lewis, Mr. Ernest Cole* and *Mr. George
A. Hall,* with an oral argument by *Mr. Lewis.*

For respondent there was a brief over the names
of *Mr. Stanley Myers,* District Attorney, and *Mr.
Jay H. Stockman,* Deputy District Attorney, with
an oral argument by *Mr. Stockman.*

BROWN, J.—Frank Putney was indicted, tried
and convicted of the crime of rape. He was a man
past the age of 32 years. Elizabeth Wolfe, a child
of the age of 12 years and 10 months, was Putney's
victim. The mother of the child was dead. At the
time of the commission of the offense involved
herein, Elizabeth Wolfe was living with a step-
mother, from whom her father had separated some
years before. It was claimed at the trial that the
crime was committed on November 7, 1922, at the
Willamette Hotel, in Portland, Multnomah County,
Oregon, which was conducted by the child's step-
mother. The child assisted her stepmother in car-
ing for the rooms. The defendant Putney lodged
at the hotel.

The testimony upon which the prosecution relied
for proof of the flagrant act charged in the indict-
ment consisted of the direct evidence of Elizabeth

Wolfe and a number of circumstances corroborating her testimony. This corroborative evidence consisted of admissions made to other witnesses by the defendant, and statements in writing delivered to the child by him whereby he sought to entice her to a bedroom for the purpose of carnally knowing her body. Communications in the defendant's handwriting were delivered to the child by his own hand, in which he attempted to allure the youthful creature to a bedroom in order that he might defile her. According to her testimony the defendant ultimately accomplished his design. He advised her to take certain medicines to bring on her menses. He suggested the securing of a doctor. He wrote her directions relating to the care of her person. We omit setting this out in full for the reason that it is not fit matter to be printed. He addressed her as "Baby." He signed his communications "Daddy." In one note, among other things he said:

"Trust me. No matter what happens don't tell on me. They won't do anything but scold you, but they would do a plenty to me. There should be a room here that I could sneak into after you clean it up in the morning. Some room that you could get to for a few minutes * *."

What follows is too obscene to set out.

In another note this man 32 years old writes to the child, in part, as follows:

"Baby:

"If I could only take you some place and love you and show you how good it is to be loved right, but now we can't do anything only watch for a chance; and please, dear, give me all the hugs and kisses you have a chance to because I need them. If you knew how much I wanted to be a real lover to you, you would never be angry."

(Signed) "DADDY."

We will now review the defendant's assignments of error. He says:

"That the court erred in not allowing defendant's motion for a continuance of this cause until after the child has been born to the prosecuting witness in order to determine the child's nationality and the date of its conception, and in not allowing said facts to be presented to the jury."

"When an indictment is at issue upon a question of fact * * the court may, upon sufficient cause shown by the affidavit of the defendant, * * direct the trial to be postponed * * to another term." Or. L., § 1513.

1, 2. It will be seen by the foregoing language that the motion to postpone the trial of the instant cause was addressed to the sound discretion of the trial court, and its decision thereon could only be reviewed for abuse: *State* v. *O'Neil*, 13 Or. 183 (9 Pac. 284); *State* v. *Hawkins*, 18 Or. 476 (23 Pac. 475); *State* v. *Fiester*, 32 Or. 254 (50 Pac. 561); *State* v. *Walton*, 51 Or. 574 (91 Pac. 495); *State* v. *Finch*, 54 Or. 482 (103 Pac. 505).

3, 4. Clearly, the court committed no error in denying defendant's application for the postponement of this trial. His alleged witness "Billy" was shown by his own affidavit to be in another jurisdiction, and it is highly improbable that he would have returned to testify to the commission of a felony by himself. Neither did the court err in denying defendant's offer to prove at the trial the fact that his motion for a continuance thereof had been overruled.

5. The next assignment reads:

"That the court erred in allowing the introduction as evidence of certain notes and letters said by the prosecuting witness to have been given by the defendant to her and not properly identified."

The notes, in this case, were not signed by the defendant; but the testimony shows that a number of communications were delivered to Elizabeth Wolfe by the defendant personally. The testimony as to the authorship of the writings does not depend upon the evidence of the child Elizabeth Wolfe alone, but the evidence of Mrs. Hansen, while she was by no manner of means an expert, was competent, and the jury had a right to consider it for what it was worth. She said the notes were in the handwriting of the defendant, and she has seen him do a great deal of writing. Furthermore, the testimony of Elizabeth S. Morad and Carrie Turner is to the effect that the defendant, while incarcerated in jail, admitted to them that he had written these communications to the girl. Undoubtedly these missives were admissible in evidence and it was proper that they be considered by the jury in corroboration of the testimony of the complaining witness.

Another assignment reads:

"That the court erred in allowing the prosecuting witness to testify as to other acts of this nature [rape] committed upon other girls by the defendant, which acts the prosecuting witness stated the defendant had told her about."

6. It is a well-established general rule that in a prosecution for crime of rape, the state is not permitted to introduce evidence tending to prove that the defendant committed, or attempted to commit, a like offense upon a female other than the prosecutrix: 1 Wharton Crim. Ev., p. 143; 10 Ency. of Ev. 597. In support of that rule, see the following decisions by this court: *State* v. *Baker,* 23 Or. 441 (32 Pac. 161); *State* v. *O'Donnell,* 36 Or. 222 (61 Pac. 892); *State* v. *McDaniel,* 39 Or. 161 (65 Pac. 520); *State* v.

110 Or.—41

*Lee,* 46 Or. 40 (79 Pac. 577); *State* v. *Start,* 65 Or. 178 (132 Pac. 512, 46 L. R. A. (N. S.) 266); *State* v. *McAllister,* 67 Or. 480 (136 Pac. 354); *State* v. *Casey,* 108 Or. 386 (213 Pac. 771, 780). The evidence in a rape case should be confined to the *res gestae* of the crime charged. What constitutes the *res gestae* of a crime depends upon the nature of the crime and the circumstances of its commission.

7. The general rule has not been violated in the case at bar. There is no testimony in the case that the defendant ever committed, or attempted to commit, rape upon the body of any other person than that of the prosecuting witness. Moreover, all circumstances, facts and declarations which grow out of the main fact charged in the indictment are contemporaneous with it and serve to illustrate its character.

"The expression, *'res gestae,'* as applied to a crime, means the complete criminal transaction from the beginning or starting point in the act of the accused until the end is reached." Underhill, Crim. Ev., § 160.

The evidence does show that within the *res gestae* of the offense the defendant intimated that he had been familiar with some girl of tender years and that "he never got her into trouble." This declaration was admissible: *State* v. *Bebb,* 125 Iowa, 494 (101 N. W. 189). This holding does not conflict with the decisions of this court last above noted.

It has been held that:

"Upon a prosecution for an attempt to commit rape upon a girl under the age of consent, it was not error to permit the prosecuting witness to testify to statements made by the defendant as to his relations with other young girls a few minutes before the perform-

ance of the criminal act." *People* v. *Davis* (Syl.), 6 Cal. App. 229 (91 Pac. 810).

In a rape case "the state may prove improper acts and solicitations to sexual intercourse by the accused toward the prosecutrix and other assaults by the accused on her, their association, acquaintance, familiarity, * * and their opportunity." Underhill, Crim. Ev. (3 ed.), § 618.

See 1 Wigmore on Evidence, § 388 and note.

Another assignment is as follows:

"That the court erred in the method used in drawing the jury and overruling defendant's objections as to said method used and the jury as impaneled."

8. It is strenuously argued by counsel that defendant is entitled to a public trial by an impartial jury composed of twelve males.

The meaning of the term "trial jury," as used in our Constitution, is well settled.

In *State* v. *Chase,* 106 Or. 263 (211 Pac. 923), this court, speaking by Mr. Chief Justice McBride, said, in reference to the meaning of the term "common-law jury," as used in our Constitution:

"The common-sense view of the whole matter is that the intention of the framers of the Constitution was to insure to a defendant the right guaranteed by Magna Charta, namely, a trial by an impartial jury of his peers, leaving details as to competency and method of selection to the legislature. Women are now the peers of men politically, and there is no reason to question their eligibility upon constitutional grounds. The fact that a common-law jury was defined to be a 'jury of twelve men,' etc., had its origin in the circumstance of the political servitude of women in the early days of juridical history, so that they were not the 'peers' of a man accused of crime. In the broad sense of the word, they are now 'freemen,' and neither the Constitution nor the

laws, when they used the term 'men,' except in rare instances, used it with reference to sex.''

9. The defendant asserts that paragraph 11, Section 6, Chapter 273, General Laws of Oregon of 1921, is unconstitutional and is a violation of Section 20, Article I, Oregon Constitution, reading:

''No law shall be passed granting any citizen or class of citizens privileges or immunities which, upon the same terms, shall not equally belong to all citizens.''

Section 6 is an amendment of Section 991, Or. L., and classifies persons who are exempt from liability to serve as jurors. Among other things, it provides that:

''Any woman desiring to be excused from jury service may claim exemption by signing a written or printed notice thereof and returning the same to the sheriff before the date for appearance, and if exemption is so claimed by reason of sex no appearance need be made in answer to said summons.''

The legislative power, in its wisdom, has seen fit to exempt certain persons from the performance of jury duty. That is a matter within the reach of legislative policy. It has the same authority to exempt women that it has to exempt ministers of the gospel, teachers, doctors, dentists, or other persons designated in the exemption provisions of the statute. The above section, giving to women the right to claim exemption from jury service, does not violate the constitutional provision invoked: *Ladd* v. *Holmes,* 40 Or. 167 (66 Pac. 714, 91 Am. St. Rep. 457); *State* v. *Randolph,* 23 Or. 74 (31 Pac. 201, 37 Am. St. Rep. 655, 17 L. R. A. 470).

As a practical illustration of an act that violates Section 20, Article I, Constitution, see *Hume* v.

*Rogue River Packing Co.,* 51 Or. 237 (83 Pac. 391, 92 Pac. 1065, 96 Pac. 865, 131 Am. St. Rep. 732, 31 L. R. A. (N. S.) 396); *Monroe* v. *Withycombe,* 84 Or. 328 (165 Pac. 227).

10. Counsel further asserts that—

"All women may refuse to serve on a jury of this kind. They have that right, and, where the defendant is unable to give bail, as in this case, he would be compelled to remain in jail for an unlimited time awaiting trial, in violation of the Sixth Amendment, United States Constitution, which provides for a speedy trial."

The defendant's cause does not come within any such possibility. He has received a "speedy trial," within the meaning of the Constitution. In the case at bar, the women did not decline to serve as jurors, but the defendant is here complaining because they did perform jury duty. However, if such a contingency as defendant suggests should ever arise, he is protected by the Constitution of this state, Article I, Section 10, which guarantees that justice shall be administered completely and without delay, and by the provisions of a statute that was enacted to carry out that constitutional guaranty:

"If a defendant indicted for a crime, whose trial has not been postponed upon his application or by his consent, be not brought to trial at the next term of the court in which the indictment is triable, after it is found, the court must order the indictment to be dismissed, unless good cause to the contrary be shown." Or. L., § 1701.

11. The defendant asserts that the court must determine this case on appeal in accordance with the statute as amended.

Section 10 of Chapter 273, General Laws of Oregon of 1921, as amended by Chapter 170, General Laws of Oregon of 1923, reads:

"In criminal cases the trial jury shall consist of twelve (12) persons * * ,"

omitting the mandatory provisions relating to the service of women in certain cases.

The new act became effective May 24, 1923. The jury returned their verdict in the case at bar on May 17, 1923. At that time Section 10 was in full force and effect and the jury was properly drawn and impaneled under the provisions of Chapter 273 as it existed prior to the amendment designated Chapter 170, General Laws of Oregon of 1923.

The defendant challenges the sufficiency of the title of the "Women Jurors and Revised Jury Law," designated Chapter 273, General Laws of Oregon of 1921, which was passed by the legislative assembly at the 1921 session and referred to the people for their approval or rejection. Defendant, by his counsel, contends that the act is invalid because the title violates the provisions of Oregon Constitution, Article IV, Section 20, which reads:

"Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title * * ,"

and cites in support of his contention *Hearn* v. *Louttit,* 42 Or. 572 (72 Pac. 132).

12. The origin and object of this section of the Constitution is familiar history. When applying its salutary provisions to a given statute, its purpose should be kept in mind. While the commands of this constitutional provision are mandatory, they should be liberally construed so as not to impede legislation:

*State* v. *Shaw,* 22 Or. 287 (29 Pac. 1028); *Calder* v. *Orr,* 105 Or. 223 (209 Pac. 479).

The legislative title of the act. (Chap. 273, Laws 1921) reads:

"To amend Sections 984, 986, 987, 988, 990, 991, 995, 997, 1399 and 1520, Oregon Laws, relating to juries, and referring this act to the people of the State of Oregon."

It appeared upon the ballot under the following comprehensive ballot title:

"Submitted by the Legislature—Women Jurors and Revised Jury Law—Purpose: To permit women to serve as jurors; to provide a special notice by which women may release themselves from jury service; to require the names of qualified jurors to be ascertained from the latest tax roll and registration books and any other sources of official information; to require the proportional selection of jurors to be made from the registration books, as well as from the assessment-roll; to require at least one-half of the trial jury to be women in criminal actions involving a minor under 18 years of age either as defendant or complaining witness."

The lawmaker knew what he was voting for. The title was sufficient.

The sections of Oregon Laws referred to in the legislative title of the act are sections of the laws of this state compiled and published under the provisions of Chapter 266, General Laws of Oregon of 1919, which compilation has been designated by the Supreme Court, acting jointly with the Code commissioner, as "Oregon Laws." See Proclamation of Ben W. Olcott, Governor, bearing date October 5, 1920. The previous edition of our Code was designated "Lord's Oregon Laws." However, the sections of the Code amended are common to each.

*Hearn* v. *Louttit, supra,* does not apply to the facts in the case at bar. "Oregon Laws" is the legal designation of the compilation of 1920, and of no other compilation.

We have considered all assignments of the defendant, and find no reversible error.

This case is affirmed.                   AFFIRMED.

McBRIDE, C. J., and BEAN and McCOURT, JJ., concur.