STATE v. STEPHEN FREEMAN.

*Rape; declarations of Prosecutrix—Evidence; former consistent declarations of Witness—Juror under ch. 63, § 19, L. '85, and § 1722, The Code—Alibi—§ 413, The Code.*

1. A juror drawn on a special *venire*, under ch. 63, § 19, L. 1885, is competent under § 1722, *The Code*, although not a freeholder.

2. The refusal to reject an incompetent juror cannot be assigned for error, if the prisoner fails to exhaust his peremptory challenges.

3. *Semble*, that when a man is charged with rape, the full particulars of a complaint, made by the woman raped, against him to other persons in his absence, too long after the perpetration of the crime to be part of the *res gestœ*, may be given in evidence by the prosecutrix.

4. Where a witness is subsequently impeached, it is not error to allow him to testify, when first examined as to consistent statements made by him to other persons. The admission of such statements before the witness is impeached, although inopportune, is not more detrimental to the prisoner than it would have been if permitted at a later stage of the trial.

5. The refusal to permit a proper question to be asked cannot be assigned for error, if the fact embraced in the question is afterwards permitted to be shown.

6. In a prosecution for rape, it is error to refuse to allow the defendant to show by the prosecutrix, on cross-examination, that she had formerly given birth to a bastard.

7. The Judge, in summing up the evidence of the prosecutrix, said: "whether her testimony be true or false, she testified most positively that the prisoner was the man who committed the rape upon her," and was about to proceed to consider the other testimony, when prisoner's counsel called attention to his failure to state that the prosecutrix had said that she did not know the woman C G, to which the Judge said, "Yes, I believe that she did say that;" *Held*, that such remark was a sufficient response to the request of prisoner's counsel, and did not convey an opinion of the Judge in violation of § 413, *The Code*.

8. While the doctrine, that when an *alibi* is relied on as a defence, the burden is shifted to the prisoner to establish it, is not sanctioned, yet, if the jury are so instructed, the effect of the instruction is done away with, if followed by an instruction that the State must prove, *beyond a reasonable doubt*, both the *corpus delicti* and its perpetration by the prisoner.

INDICTMENT for rape, tried before *Meares, J.,* at November 'Term, 1887, of the criminal Court of NEW HANOVER county. The facts are set out in the opinion.

*Attorney General,* for the State.
*Mr. Thomas W. Strange,* for the defendant.

SMITH, C. J.   The prisoner is charged with having committed a rape upon the body of one Addie Sellers, and upon his trial in the Criminal Court of New Hanover County at November Term, 1887, was found guilty by the jury, and from the judgment rendered upon the verdict, appealed to this Court.   The prosecutrix, a married woman, of the age of twenty-three years, and residing alone with a young child in the city of Wilmington, her husband being at work in Georgia, testified as follows:

In the afternoon of the day preceding the night on which the outrage was perpetrated, while the witness was in conversation with one Mary Jones, a colored woman, who had come to her house which contains but a single room, the prisoner came to the door and asked witness if she had any empty bottles to sell, remaining but a few moments and then inquired if witness lived there alone; witness replied "yes," and that her husband had gone to Georgia.   She did not at the time know the name of the prisoner, but she noticed that his voice was a very peculiar one.   Later in the night, between the hours of 1 and 2 o'clock, while alone with her child, a person knocked at the door and asked to be let in. On her refusal in positive terms to admit him, he enquired if there were any fast girls in the neighborhood, and witness told him of a house where it was said lived women of that class, and he went away.   In a little time he returned and again asked to be admitted, adding that he would not hurt her.   Being again refused, he said there were then four men outside and if she did not open the door they would break

in, to which witness replied, that she would shoot him if he forced the door open. He then leaving the front door went to a window and tried to break it open, at the time firing a pistol. Whereupon she was frightened and screamed in a very loud voice. He then went to the back door and tried to force an entrance which she resisted by pushing against it, but he overcame her resistance and forced the door open and entered the room. Thereupon she retreated towards the front door screaming with all her might, when he advanced, seized her by the throat and choked her with such severity as to suppress her cries, threw her down upon the floor dragged her out to a fence a few feet from the house and still holding her by the throat accomplished his purpose. He then inquired if she knew him, and she, fearing that he would take her life if she did know him, answered "no" she did not know him, and she gave the answer in fear for her life, while she could recognize and identify him both from his appearance and unusual voice, but did not then know his name, nor did it occur to her that he was the same man who had called the day before and learned about her being alone, but after the rape was consummated, she called to mind the coincidence. When he effected an entrance there was a bright light burning in the room and she had a good look at him and has no doubt whatever of the identity of the prisoner as the person who committed the crime. Very soon after, afraid to remain, she went alone to the house of one Robert Skylock, an elderly colored man, who resided in the neighborhood in a house of his own, part of which is rented and occupied by one Smith, an elderly white woman, to obtain shelter and protection, and after telling him of the criminal assault, requested him to go and nail up the doors of her house, which was done. There was corroborative testimony from others who heard the cries after midnight and the report of the pistol, and there were many witnesses who swore to the presence of the prisoner at

his own house with his wife on the night in question, and tend to show that he remained at home during the period within which the criminal assault was made. It is not deemed necessary to set out the evidence in detail, which is voluminous and extends over more than twenty pages of law cap, in order to a proper understanding of the rulings to which exception is taken by the prisoner.

1. The first exception is to a disallowance of a challenge of one S. S. Mitz, a juror tendered to the prisoner, for that he was not a freeholder, and to the refusal of the Court to permit an inquiry into the fact of this alleged disqualification. The juror was one of the number of the special venire drawn from the jury box under the directions of the Act of 1885, chap. 63, § 19, which requires the jurors to be taken from the box prepared by the Board of County Commissioners, and to possess the qualifications of jurors in the Superior Courts. Hence, such as would be competent, and whose names are directed to be put in the jury box, from which, in the Superior Courts, the regular panel is formed according to § 1722 of the *The Code*, are competent to serve in the Criminal Court, as they are drawn in the same manner, and among the required qualifications is not that of having a freehold estate. *State* v. *Wincroft*, 76 N. C., 38.

But if there were error in the ruling, it is removed by the fact that the juror was peremptorily challenged, and a jury of good and lawful men constituted without exhausting the number of jurors allowed to be peremptorily challenged, with which the prisoner was content.    *State* v. *Arthur*, 2 Dev., 217 ; *State* v. *Hensley,* 94 N. C., 1021.

2. The second exception is to the admissions of the declarations made by the prosecutrix to Skylock and Mrs. Smith, soon after the occurrence, when she went over to their house, and in which she gave a minute and particular account of what transpired at her own house.    Testimony was received

from her of what she said to others, at different times, when detailing the occurrence.

The objection is not to her making complaint of the out-. rage, for this is corroborative of her testimony at the trial, and tends to repel the inference drawn, from silence and inaction, of the connection having been with her consent, but that the particular facts cannot be given in evidence to support her credit, unless it has been *assailed*. Such seems to be the law, as laid down in the decisions of the Courts, and thence derived by recognized and approved writers on the subject.

The rule which thus shuts out the words in which the complaint is made, and early arrests the testimony so that it cannot be seen *what kind of complaint was made*, and its import, as corroborating the charge, seems, notwithstanding its. general acceptance, not to commend itself, for sufficient and satisfactory reasons, to the judicial mind. Accordingly, in a foot note, appended to the subject of rape in the third volume of Greenleaf's Evidence, are found these words: "Mr. Stephens also, in his note 5 to article 8, states that the practice of admitting particulars of the complaint, is in accordance with common sense, and cites the language of Park, B., in *Regina* v. *Walker*, 2 M. & Rob., 212, (to which we have not had access,) where he says *the sense of the thing* certainly is, that the jury should, in the first instance, know the nature of the complaint made by the prosecutrix, and *all that she then said*. But, for reasons which I never could understand, the usage has obtained that the prosecutrix's counsel should only inquire whether a complaint was made by the prosecutrix of the prisoner's conduct towards her, leaving the prisoner's counsel to bring before the jury the particulars of the complaint by cross-examination." "It is said," proceeds the note, "that Baron Bromwell, of the English Court of the Exchequer, was in the habit of admitting the complaint itself." In this country the practice has been to admit only

100—28

the fact that a complaint was made, unless the complaint was made so soon after the offence as to be part of the *res gestæ.* The comments of Baron Park are mentioned, but not with entire approval, by the author of another valuable treatise, Best on Evidence, p. 471, Notes. Again, we find this statement of the ruling in a recent case, *Regina* v. *Wood*, 14 Cox, C. C., 46, also not in our library: "When a man is charged with committing a rape, the full particulars of the complaint the woman made against him to other persons in his absence, sometime after the alleged offence, may be given in evidence"—by whom, is not stated.

This is in consonance with adjudications in this State, which, whenever the witness is impeached and in whatever manner, even if it be done in the cross-examination, permits his credit to be sustained by proof of declarations made to others similar to the testimony given in and assailed, and these may be proved by the witness who made them. *State* v. *George*, 8 Ired., 324; *March* v. *Harrell*, 1 Jones, 329, and subsequent cases; *vide State* v. *Whitfield*, 92 N. C., 831. As any mode of assailing the truthfulness of a witness warrants a resort to the necessary means of repairing the injury to his credit, and re-instating it before those who are to pass upon its weight, so a witness may be surrounded by circumstances tending to impair his credit, such as a conspirator testifying against his associates in crime, who comes before the jury under a cloud, which would seem to admit of its dispersion by evidence in support of his credit, and if the rule be thus extended, it would be difficult to put the prosecutrix testifying to an outrage on her person, to which, most commonly, she is the sole witness, outside the sphere of its operation.

But, in enumerating the difficulties attending the general rule, we do not find it necessary to declare that the narration of the particulars of the crime, so near the time of its commission, was proper to be received; there was abundant

impeaching and contradictory evidence offered, subsequently, to render that in dispute, if heard afterwards, competent; nor do we see in what manner its being offered at an inopportune time could be, for that reason, more detrimental to the prisoner's defence than it would have been if heard at a later stage of the trial. These views have more or less application to all the confirmatory declarations of the prosecutrix, made to different persons, descriptive of what transpired.

3. The next exception is to the ruling out of the question asked by the prisoner's counsel, on the cross-examination of the prosecutrix, as to whether she had ever given birth to a bastard child? The ruling was clearly erroneous, and would have led to a new trial, but that the fact was afterwards proved and admitted both by the Solicitor and the prosecutrix, re-called for the purpose of testifying to the fact, with a brief cross-examination of the prisoner's counsel, and this in unequivocal terms.

4. The Judge, while recapitulating the testimony of the prosecutrix and commenting thereon, used this language: "The prosecutrix testified that she was certain that the prisoner was the man who came to her house on the afternoon before the rape was committed upon her, and while Mary Jones was in her house, and asked if she had any bottles to dispose of; and also enquired if she lived there alone; and that he was the man who came to her house and effected a forcible entrance and committed a rape upon her on the night in question. Whether her testimony be true or false, she testified most positively that the prisoner was the man who committed the rape upon her." The Court, having concluded the recapitulation of the testimony of the prosecutrix, was about to proceed to consider the other testimony, when the prisoner's counsel called attention to the failure to state, that the prosecutrix, replying to a question of the Solicitor, had said that she did not know the woman Celia

Gardner; to which the Court, in a distinct voice said, "Yes, I believe that she did say that." This, as an insufficient response to request of counsel, forms the subject of another exception.

In this, we see no invasion of the principle contained in the Act of 1796, *The Code*, § 413, which forbids the Judge to give any opinion, "whether a fact is fully or sufficiently proven." He but states what was sworn to by the witness, and the positive manner in which she declared her recognition of the prisoner as the author of the assault upon her, with which the omitted part seems to have no very clear connection; nor is there indicated, so far as we can see, any inclination of the Judge's own mind upon the question of identity.

5. The following portion of the charge is also excepted to as an erroneous statement of the law, following instructions bearing upon and applicable to the facts testified to:

"The general rule applicable to all criminal cases is, that the burden rests upon the State to establish the guilt of the prisoner (accused) beyond a reasonable doubt, and, applying it to the facts of this case, the law requires that the State must establish two facts beyond a reasonable doubt in order to convict the prisoner. In the first place, the State must establish the fact, beyond a reasonable doubt, that a rape was committed on the person of the prosecutrix, on the night in question, by some man; and in the second place, that, if a rape was committed on the person of the prosecutrix on the night in question, the prisoner at the bar is the man who committed it. And, therefore, if the State fails to establish either one of these facts, beyond a reasonable doubt, in the minds of the jury, the prisoner should be acquitted." The objectionable part is in the words that follow: "The prisoner denies the existence of both of these facts. He denies, in the first place, that any rape has been committed on the person

of the prosecutrix; and, in the next place, denies that he was present if one was committed upon her.

One of the defences set up by the prisoner is that of an *alibi ;* that.is, he asserts, that at the time of the alleged rape, he was at home, on his bed, in another part of the city, and, therefore, it was impossible for him to have committed the rape. The rule of law is, in a case of this kind, where the prisoner sets up the defence of an *alibi*, that is, that he was at some other place at the time when the crime was committed, the burden of proof rests on the prisoner to establish the fact to the satisfaction of the jury that he was not present, but was at some other place when the crime was committed. If the jury is satisfied from the evidence that the prisoner remained at home on the night in question, this would be an end of the case, and the prisoner should be acquitted. But if they are not satisfied of the truth of the *alibi*, then it is for them to say whether they are satisfied, beyond a reasonable doubt, that the rape was committed upon the person of the prosecutrix by the prisoner, as alleged by the State."

We reproduce, at length, the instruction to which exception is taken, in order that it may be understood, and the sufficiency of the grounds upon which it rests be determined.

While we do not assent to what is said about the shifting of the burden of proof, when the proof offered by the prisoner tends to show his absence from the place where the offence was perpetrated, and his *presence elsewhere* at the time, yet the charge in general is so clear and explicit, as to what is required of the State in order to a conviction, that it could not be misleading to the jurors, fairly considered.

The defence known as an *alibi* is operative as disproving the charge, and impairing, if not destroying, the credit of the witnesses who testify to the identity of the party accused, an essential element in the case. It is testimony against testimony in reference to the identity, in the present instance, and opposing evidence which, if believed to be true, defeats

the prosecution and vindicates the prisoner's innocence of the charge. Its force and effect, as such, were fully presented to the jury, and they were told that it was necessary to a conviction, that the State should prove, *beyond a reasonable doubt,* both the perpetration of the crime, and that it was perpetrated by the prisoner. At the same time they were told, that if his absence was shown, it was a full and complete defence.

We think, therefore, the unnecessary suggestion to which we have referred, is so explained in the instruction that it could not tend to mislead the minds of the jury. Taken as a whole, the charge is unexceptionable.

It must be declared, therefore, that there is no error, and the judgment is affirmed.

No error.                                    Affirmed.