Argued January 10, decided January 24, 1911.

## STATE v. MACK.

[112 Pac. 1079.]

CRIMINAL LAW—CONTINUANCE—DISCRETION OF COURT.

1. The granting or refusal of a continuance rests in the sound discretion of the trial court.

CRIMINAL LAW—REVIEW—DISCRETION OF COURT—CONTINUANCE.

2. The action of the trial court in granting or refusing a continuance should not be disturbed on appeal, unless manifestly wrong and arbitrary, involving abuse of its discretion.

CRIMINAL LAW—CONTINUANCE FOR ABSENT WITNESSES—AFFIDAVIT.

3. An affidavit for continuance to secure absent witnesses alleged that defendant had lived in another state for several years past and was not well known within this State; therefore could produce no witnesses as to his former life; that at the time of the homicide he had been drinking heavily, and that for four years or more when intoxicated he lost consciousness, and that this was well known to persons named, and was material, etc.; that his wife advised him that she and his mother-in-law would attend the next term; that friends advised him they would procure means to secure attendance of other witnesses; that his wife had informed him of the serious illness of their infant child, and that she would not be able to attend at that term. *Held,* that, as the procuring of the witnesses appeared doubtful, and it did not clearly appear that

defendant could not prove his usual condition of mind when intoxicated by witnesses within the State, the court's refusal of the continuance was not an abuse of discretion.

CRIMINAL LAW—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

4. Error in sustaining objection to a question to an expert, as to whether defendant was in possession of his faculties when the alleged crime was committed was cured where a similar question more fully stated was answered by the witness.

HOMICIDE—TRIAL—ISSUES—SELF-DEFENSE.

5. Under plea of not guilty, defendant might show a killing in self-defense.

HOMICIDE — INSTRUCTIONS — SELF-DEFENSE — EVIDENCE REQUIRING INSTRUCTION.

6. In a prosecution for homicide, a witness testified that he witnessed the shooting, and his testimony did not show any attack by decedent, and an impeaching witness testified that he reached the scene of the homicide soon after the shot was fired and asked the eyewitness who shot decedent, and the eyewitness said he "thought it was a hobo; that decedent kicked him—kicked him out—and the party shot decedent." Another witness testified that defendant told him that he shot decedent because decedent kicked him out. Held, that the first being hearsay, admitted for impeachment, and the confession not being evidence to prove other facts, and there being no other evidence of self-defense, it was proper to refuse an instruction thereon.

CRIMINAL LAW—RECEPTION OF EVIDENCE—PURPOSE OF EVIDENCE.

7. Where, in a prosecution for homicide, there was no competent evidence tending to show self-defense, but an impeaching witness testified that the state's witness said that the decedent had kicked the defendant, it was proper for the court to call the jury's attention to the purpose of such evidence in stating that self-defense was not in issue.

From Josephine: HIERO K. HANNA, Judge.

The defendant, Will Mack, was indicted for the crime of murder in the first degree and upon trial was convicted of murder in the second degree and from the judgment and sentence following such conviction, he appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. William C. Hale* and *Mr. Asa C. Hough*, with an oral argument by *Mr. Hough*.

For the State there was a brief over the names of *Mr. Benjamin F. Mulkey*, district attorney, and *Mr. Robert G. Smith*, with an oral argument by *Mr. Smith*.

MR. JUSTICE BEAN delivered the opinion of the court.

On January 11, 1909, the defendant was indicted for the crime of murder in the first degree, charged to have been committed on the 4th day of December, 1908. Upon trial he was convicted of murder in the second · degree, was sentenced, and appeals, assigning errors.

That the trial court erred and abused its discretion in overruling the motion of defendant for a continuance of the case until the next term of court; that defendant, in support of his motion for a continuance, made and filed an affidavit, showing that he had lived in Wardner, Idaho, for several years past, until about September 1, 1908, when he came to Grants Pass, Oregon; that he had no friends or acquaintances in Grants Pass other than those formed since his arrival there, and therefore could produce no witnesses as to his former life; that at the time of the homicide he had been drinking heavily, and that at times he had drank heavily for the past 15 years; that for four or more years when intoxicated he had lost all consciousness and recollection; that this fact was well known to numerous of his friends and acquaintances at Wardner, Idaho; that the defendant's wife, Ollie Mack, and his wife's mother, Dora Wilson, James Nevill, superintendent of a mine, and S. W. Zentner, night marshal of Wardner, all resided at that place, and were well acquainted with defendant, had been for years past, and were well acquainted with the fact that when he became intoxicated, beyond a certain degree, he lost all recollection; that his mind became a blank, and that he could remember nothing during such intoxication; that the witnesses, if present, would testify to such fact, "which fact is material to my defense for the purpose of tending to show that under such condition I have been unable and incapable and incompetent of forming any purpose or intent in relation to any act of mine during such period

of intoxication; that I am advised by my wife, Ollie Mack, that if the trial of this action is postponed until the next term of this court, she and Dora Wilson will attend at that trial and testify to said facts; that I am advised by my friends and relatives that they will secure the means for me to procure the attendance of James Nevill and S. W. Zentner at said trial." And further alleges, based upon such advice, that said witnesses would attend at the next term of court; "that I cannot procure the attendance of any witnesses at this term of court who are acquainted with my past condition while intoxicated, and therefore cannot safely go to trial in said action at this term of this court, nor before the next regular term of this court."

It is further shown in defendant's affidavit that his wife informed him in her last letter of the serious illness of their infant child, and that on account of such illness neither his wife nor Dora Wilson would be able to attend at that term of court. From the whole tenor of the affidavit of defendant it unquestionably appeared doubtful to the trial court if the witnesses named by defendant could be obtained for the trial, if continued until the next term of court.

1, 2. The granting or refusing of a continuance rests in the sound discretion of the trial court, and its determination should not be disturbed, unless manifestly wrong and arbitrary, involving an abuse of such discretion. *State v. O'Neil,* 13 Or. 183, 185 (9 Pac. 284) ; *State v. Howe,* 27 Or. 138 (44 Pac. 672) ; *State v. Hawkins,* 18 Or. 476 (23 Pac. 475) ; *Walker v. State,* 91 Ala. 76 (9 South. 87) ; *McDaniel v. State,* 8 Smedes & M. (Miss.) 401 (47 Am. Dec. 93) ; *Cox v. State,* 64 Ga. 374 (37 Am. Rep. 76).

3. In the case of *State v. O'Neil,* 13 Or. 183 (9 Pac. 284), Mr. Justice LORD, commenting on the affidavit for a continuance, on account of the absence of a material witness, observes:

"In this statement there are no facts set out from which the court can judge whether there is reasonable ground to believe that the attendance of the absent witness can be procured at a future day. It is not enough to say, 'I am confident I can procure his attendance at the next term of the court'; but the facts or circumstances upon which such confidence or belief is founded must be set out, so that the court may look into and determine from them whether there is reasonable ground to believe that the attendance of the witness can be procured."

In the case at bar the allegation of the defendant that the persons named would be in attendance to testify in said trial at the next term of court, is based upon the advice of his wife, Ollie Mack, and the advice of his friends and relatives that they would secure the means for defendant to procure the attendance of James Nevill and S. W. Zentner. The homicide occurred on the 4th day of December, 1908; the indictment was returned on the 11th day of January, 1909; the affidavit made on January 13, 1909. The defendant was arrested on the day of the homicide, and had been incarcerated from that date until the time of the trial. To say the least it would, from the affidavit, appear very doubtful that his wife and mother-in-law, Dora Wilson, would be able to attend the trial at the next term of court, or to procure the attendance of the other witnesses named, and the further statement of the wife, as to the illness of the child, is but little more than an excuse for not appearing and assisting her husband in his trouble. Further, it is not clear from the affidavit that the defendant could not prove his usual condition of mind when intoxicated by other witnesses who had known him during his stay at Grants Pass.

While a liberal rule should be adopted, allowing persons charged with a crime sufficient opportunity to prepare their defense, and particularly in procuring the

attendance of witnesses, nevertheless where they reside in another state, remote from the place of trial, and "are not amenable to the process of the court, the affidavit ought to set out the facts fully and explicity, so as to satisfy the court, in furtherance of right and justice, that the delay ought to be granted." *State* v. *O'Neil,* 13 Or. 183 (9 Pac. 284).

After a careful examination of the facts set forth in the affidavit for the continuance, we are unable to say that there was any abuse of discretion by the trial court in overruling the motion for a continuance. As we understand the record, the motion was solely based upon the ground of the absence of material witnesses, and we find no request for a continuance, except for the term. The court, apparently recognizing the fact that the defendant had no means to procure counsel to make a defense, appointed two able attorneys who appeared for and conducted the trial in defendant's behalf.

4. It is contended that the court erred in sustaining the objection made by the State to the following question propounded by defendant's counsel to the witness, Dr. F. W. Van Dyke:

"Now, doctor, from what you saw and observed of the defendant there at that time, and his manner and conduct and speech, what have you to say as to his being in possession of his faculties at that time?"

It appears, however, from the record, that the next question propounded to the witness was as follows:

"I will now ask you, doctor, from all you observed of this defendant during the time you saw him there at the Layton Hotel, from his conduct and acts and from his speech, and the nature of his speech, whether he had the appearance to you of a person who was in the possession of his faculties to the extent of knowing right from wrong?"

To which the witness answered:

"Well, he was unquestionably drunk. I don't think there is any doubt about that; but I think, from the way I sized the man up, that he undoubtedly knew that he had shot a man, and had sense enough to know that to shoot a person or draw a revolver would be wrong, although I don't think he drew any fine conclusions, or anything of that sort at all. Speaking in a general way, I think he had sense enough to know that it was wrong to shoot a man."

The second question is more fully stated and is of the same import as the first, to which objection was sustained, and the latter question was fully answered and the matter thoroughly explained to the jury by the witness Dr. Van Dyke, and if there was any error in sustaining the objection to the first question, it was cured by receiving the evidence in answer to the second question: *State* v. *Freeman,* 100 N. C. 429 (5 S. E. 921).

5. The court gave an instruction in regard to manslaughter as follows:

"If any person shall, without malice, express or implied, and without deliberation upon a sudden heat of passion, caused by provocation apparently sufficient to make the passion irresistible, voluntarily kill another, such person shall be deemed guilty of manslaughter."

Counsel for defense asked, in addition thereto, an instruction as follows:

"There is evidence in this case tending to show that deceased attacked and kicked defendant out of his (decedent's) place of business, and if you find from the evidence that such attack (if any was made upon defendant by deceased) was apparently sufficient to make defendant's passion irresistible, and because of such passion defendant shot deceased, then you will find defendant guilty of manslaughter."

This instruction was refused by the court, to which exception was taken, and error alleged. The reference to

the evidence in the instruction requested, "tending to show that deceased attacked and kicked defendant," will hereafter be considered, together with the instruction requested as to self-defense. Counsel for defendant asked an instruction relating to the question of self-defense, which the court refused, and instead thereof instructed the jury, in effect, that no element of self-defense appeared in the case.

Thomas J. Foshay, witness for the State, in describing the shooting, testified:

"Mr. Carter was standing in the double door, about eight or ten feet from where I was cleaning the spittoons. He stood there a couple of minutes, and he says: 'I'm out now; I don't know whether I will stay out or not,' and pulled a gun and shot Mr. Carter."

And, for the purpose of impeaching the witness Foshay, Jim Burns was called as a witness for defendant, who testified that he was in the front part of the hotel, and when the shot was fired he heard Carter "holler," and ran in there, and Carter was shot. He asked witness Foshay how it happened. Foshay said he did not know who shot; he thought it was a hobo; that Carter "kicked him— kicked him out—and the party shot Carter." The court, in referring to the discussion by counsel, "relative to what it is claimed on the part of defense that the evidence shows, that Miles Carter had put the defendant out and kicked him," instructed the jury that "there is no evidence of that in the case at all. All there is of that is that, in seeking to impeach the witness on the part of the State (Thomas Foshay), the defense put on two witnesses, who testified that the witness (Thomas Foshay), in conversation with them, had told them that that was the fact. * * There is no element of self-defense in the case."

Wharton, Homicide, § 221, p. 335, states:

"And the rule is general, if not universal, that where one attempts to justify a homicide under the plea of self-

defense, which the evidence tends to sustain, he is entitled to have the jury fairly instructed as to the law applicable to his theory of the case, and to have them left free to determine the fact as to whether his conduct was, or was not, warranted by the facts. And this rule applies, though the testimony tending to sustain that defense is that of himself only"—citing many authorities.

Therefore in this case the question is raised as to whether or not there is any evidence tending to sustain a plea of self-defense, and to justify the homicide. There can be no question but that the defendant, under his plea of not guilty, had the right to prove facts showing the killing was done in self-defense: *State* v. *Branton*, 33 Or. 533, 550 (56 Pac. 267.) But the question is, Was there any evidence tending to show any such fact? *State* v. *Howe*, 27 Or. 138 (44 Pac. 672.)

6. The testimony offered for the purpose of impeaching the witness Foshay in so far as it referred to what was claimed to be a statement of Foshay, that Carter, the decedent, kicked the defendant, was purely hearsay, and in no way tended to prove the fact that decedent did kick defendant or make an assault upon him. Witness C. N. Clements, who was present at the Layton Hotel during the evening after the homicide, testified to a conversation with the defendant at that time, in which he asked, "Why did you shoot this man?" defendant answering, "Because he kicked me out, and I would do it again." Other witnesses also testified that defendant stated, as a reason for shooting decedent, "Because he kicked me out, or threw me out." It is claimed that the latter part of this statement, made by defendant in explanation of the shooting, tends to prove the fact that the decedent did kick or assault the defendant.

In Wharton, Criminal Evidence, (9 ed.) § 623, it is stated:

"A confession is rather a fact to be proved by evidence than evidence to prove a fact. It is not so much proof

that a particular thing took place, as it is a waiver by the party charged of his right to have certain facts alleged against him technically proved. A., for instance, is shown to have said that certain facts implicating him actually took place. Were this statement by A. offered as evidence of such facts, it would be merely hearsay, and would be inadmissible. But it is not offered to prove the facts, but to show that A. has dispensed with their proof."

Wigmore, Evidence, vol. 3, § 2113, in discussing the effect of such explanatory statements, observes:

"The remainder thus received merely aids in the construction of the utterance as a whole, and is not in itself testimony. * * The single purpose of considering the utterance as a whole is to be able to put a correct construction upon the part which the first party relies upon, and to avoid the danger of mistaking the effect of a fragment whose meaning is modified by a later or prior part." Underhill, Criminal Evidence, § 99; *Liles* v. *State*, 30 Ala. 24 (68 Am. Dec. 108); *McKee* v. *People*, 36 N. Y. 113, 116; *Shrivers* v. *State*, 7 Tex. App. 450, 454.

Section 711, L. O. L., provides:

"When part of an act, declaration, conversation, or writing is given in evidence by one party, the whole, on the same subject, may be inquired into by the other." *Mahon* v. *Rankin*, 54 Or. 328, 340 (102 Pac. 608: 103 Pac. 53.)

7. A careful perusal of all the testimony in the case fails to disclose that there was any evidence tending to show that Carter, the decedent, kicked or assaulted the defendant. It was therefore proper for the trial court to call the jury's attention to the purpose for which the testimony was offered, to impeach the witness Foshay, and the effect thereof. 12 Cyc. 600; *Bruno* v. *State*, (Tex. Cr. App.) 58 S. W. 85; *People* v. *King*, 27 Cal. 507 (87 Am. Dec. 95.)

There being no evidence in the case tending to show that the killing was in self-defense, it was not error to refuse an instruction requested as to the law of self-

defense. *State* v. *Garrand,* 5 Or. 216; *State* v. *Doherty,* 52 Or. 591, 595, 597 (98 Pac. 152) ; *Willis* v. *State* (Tex. Cr. App.) 74 S. W. 638; *Spencer* v. *State,* 48 Tex. Cr. R., 580 (90 S. W. 638) ; Wharton, Homicide, § 225.

The court, in the language of the statute, gave in substance the instructions requested by defendant, in so far as they were applicable to the facts in the case, and no error in the instructions given has been pointed out, and we find none: *State* v. *Branton,* 33 Or. 533, 549 (56 Pac. 267) ; *State* v. *Tucker,* 36 Or. 291, 292 (61 Pac. 894: 51 L. R. A. 246.)

It follows that the judgment must be affirmed.

AFFIRMED.