Argued September 11, affirmed September 19, rehearing denied October 16, 1917.

## PORTLAND & O. C. RY. CO. *v.* SANDERS.

(167 Pac. 564.)

**Appeal and Error—Continuance—Grant—Discretion of Court.**

1. The allowance or denial of a motion to postpone the hearing of a cause is within the trial court's discretion, which will not be disturbed save in case of manifest abuse.

**Continuance—Denial—Propriety.**

2. Section 115, L. O. L., declares that a motion to postpone trial on ground of absence of evidence shall only be made upon affidavit showing materiality of evidence expected to be obtained, what diligence has been used to procure it, the name and residence of the witness or witnesses, that the court may require the moving party to state the evidence which he expects to obtain, and that if the adverse party thereon admits that such evidence would be given, etc., the trial shall not be postponed. Defendant in a condemnation suit filed an affidavit, stating that he had been selected as a member of the jury panel for the January term of court; that he had been for some time past sitting as a juror in a criminal prosecution, and was only released at noon of the Saturday preceding the Tuesday for which the case was set; that because of the weather, street-cars and telephones being out of commission, he had been unable to prepare his case for trial; and that his attorney would be absent. The application did not give the names of any witnesses whom defendant expected to call, or what preparations were necessary. *Held,* that the denial of the application for postponement was not an abuse of the trial court's discretion.

**Appeal and Error—Review—Questions of Law—Expert Testimony.**

3. Where a witness is produced as an expert, the court, before he can be allowed to testify as such, must determine whether the question involved lies without the domain of common experience so as to be the subject of expert testimony, and the conclusion reached is a matter of law subject to review on appeal.

**Evidence—Opinion Evidence—Expert Testimony.**

4. Where a witness is tendered as an expert, it is the duty of the court, as a preliminary question of fact, to determine his qualification from his testimony thereto.

**Evidence—Experts—Qualifications.**

5. Testimony that one offered as an expert witness as to the value of defendant's lands taken under eminent domain proceedings and as to the damages had been assessor of the county and was familiar with land values establishes his qualification as an expert.

[As to admissibility of opinion of witness in respect to amount of damages to realty, see note in **Ann. Cas. 1912A, 191.**]

**Trial—Instructions—Requests Covered—"Market Value."**

6. In a suit to condemn a railroad right of way, a charge that there were only two questions for the jury to determine: First, the reasonable market value of the land taken; and, second, the amount of damages to the remaining land caused by the taking; that the measure of damages is the market value of the land taken at the time of filing the complaint; that by market value is meant the value which would be placed on the property by one desirous of selling but not obliged to sell, or one wishing to purchase but not obliged to do so; that, having determined the market value of the land, the jury should consider whether the remaining land had been damaged, and also whether or not there was a benefit by the construction of a railroad therethrough; and that should the jury determine that the benefits offset the damages, then nothing should be allowed on account of that, but if the damages were greater than the benefits, should it be found the land was in any way benefited, defendants should be allowed the difference—fairly instructed the jury as to the rules of law applicable to the assessment of damages, so that a denial of additional instructions was proper. .

**Eminent Domain—Damages and Benefits—Distinct Tracts.**

7. In a suit to condemn a railroad right of way through a tract of land dividing it, damage and benefits cannot be separately assessed to each of the resulting parcels, disallowing benefits to one to be offset against damages to the other.

**New Trial—Newly Discovered Testimony—Right to.**

8. Where defendants were denied postponement and then moved for a new trial on the ground of newly discovered testimony, the motion for new trial cannot be granted where there was no showing that the witnesses who made affidavits as to their knowledge would appear and testify to the facts deposed.

**New Trial—Cumulative Evidence.**

9. A new trial cannot be granted on account of newly discovered cumulative evidence.

From Multnomah: GEORGE N. DAVIS, Judge.

Action by the Portland & Oregon City Railway Company, a corporation, against W. A. Sanders and Minnie S. Sanders, his wife, and others, to condemn a right of way for railway purposes. From a verdict and judgment in favor of defendant Sanders and wife, for the sum of $235, they appeal. Affirmed.

Department 2. Statement by MR. JUSTICE MOORE.

This is an action to condemn a right of way for an electric railroad across the premises of the defendant W. A. Sanders in sections 13 and 14, in township 1 south, range 1 east of the Willamette Meridian. Commencing at the southeast corner of his land the line runs west 572.36 feet; thence north 9 degrees 30 minutes west along the east boundary of the right of way of the Oregon & California Railroad Company, now operated by the Southern Pacific Railway Company, 233.77 feet; thence east along the south line of Mitchell Avenue, in Portland, Oregon, 611.16 feet; and thence south 230.57 feet, to the place of beginning, containing 3.13 acres, in Multnomah County. The right of way demanded in this action begins at a point in the center of East Twenty-fourth Street extended, on the north boundary of Sanders' land 435.5 feet west of his northeast corner; thence west on the south line of Mitchell Avenue 10 feet; thence south and parallel with the center line of East Twenty-fourth Street extended 230.57 feet to the south line of his land; thence east along such south line 20 feet; thence north and parallel with the center line of East Twenty-fourth Street extended 230.57 feet, to the south line of Mitchell Avenue; and thence west along such south line 10 feet, to the place of beginning. By computation it will be seen that the right of way particularly described cuts

the western part of Sanders' land into a quadrilateral, the south boundary of which is 126.86 feet, and the north is 165.66 feet, while the east part of his premises forms a rectangle 435.5 feet long and 230.57 feet wide.

The complaint herein is in the usual form. All its averments are admitted by the amended answer, which alleges that the reasonable value of the land to be appropriated is $700; that the damages which would result to the western part of the premises amount to $4,000, and to the eastern part $5,000, making in all $9,700.

The reply put in issue the allegations of new matter in the answer and averred that the reasonable value of the land demanded did not exceed $150, and that by constructing the proposed railway Sanders' real property would be benefited in the sum of $4,500. The cause was tried, whereupon the jury, which by order of the court had visited the premises, awarded Sanders as the measure of his damages $235, and a judgment having been rendered on the verdict he and his wife, the defendant Minnie S. Sanders, appeal.

AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. G. E. Hamaker.*

For respondent there was a brief and an oral argument by *Mr. Julius N. Hart.*

MR. JUSTICE MOORE delivered the opinion of the court.

1, 2. It is contended that an error was committed in denying the motion of Sanders' counsel for a postponement of the trial. Supplying the omitted name of a defendant in a criminal action referred to in the affi-

86 Or.—5

davit in support of the motion the sworn statement for
a continuance reads:

"State of Oregon,
        County of Multnomah,—ss.

"I, W. A. Sanders, being duly sworn say that I am
one of the above named defendants and the owner of
the land sought to be appropriated by the plaintiff in
the above entitled cause; that I was selected as a mem-
ber of the jury panel for the January term of the cir-
cuit court of the state of Oregon for Multnomah
County; that ever since I was notified of the date of
the trial of the above entitled cause I have been serving
on the jury, with the exception of Saturday, January
29, 1916; that during the past week I have served con-
tinually on the jury in the cause of the State of Oregon
v. (A. Nakano) a Japanese, on trial for murder; that
I have not been able to get home for the past three
days and was only released from said jury at 12:00
o'clock today; that because of the foregoing facts, and
because of the condition of the weather, the tie-up of
the street cars, and the telephones, I have been unable
to prepare my case for trial on Tuesday next; that my
attorney will not be able to assist on Monday, Febru-
ary 7, 1916, on account of other duties that must be
performed by him. For the foregoing reasons I ask a
continuance of the above entitled cause for two or three
days.

"Dated this 5th day of February, 1916.
                                "(Signed)   W. A. SANDERS.

"Subscribed and sworn to before me this 5th day of
February, 1916.
                        "(Signed)   THOMAS A. HAYES,
                                "Notary Public for Oregon.
"My commission expires August 1, 1919."

The order disposing of the application reads:

"That said motion and affidavit were presented to
the court and heard on the 7th day of February, 1916,
and that thereafter, to wit, on the 30th day of March,
1916, the court made and entered its order *nunc pro*

*tunc* denying said motion and application for continu-
ance as follows: 'This cause came on to be heard, upon
the oral application and motion of the defendants W. A.
Sanders and Minnie S. Sanders, his wife, in open court
on the 7th day of February, 1916, for a postponement
or continuance of the trial of the above entitled cause,
the plaintiff appearing by its attorney, J. N. Hart,
and the said defendants appearing by their attorney,
Thomas A. Hayes; said oral application and motion
was heard upon the affidavit of the defendant W. A.
Sanders, which said motion and affidavit was presented
to the court at said hearing, but not filed with the clerk
herein until the 11th day of February, 1916.    Said oral
application was based upon the facts set forth in said
affidavit of defendant W. A. Sanders, now on file herein,
and which was filed the 11th day of February, 1916.
And it appearing to the court at said hearing that this
action had been duly and regularly set for trial Febru-
ary 8, 1916, at the hour of 9:30 o'clock A. M. of said
day, the same having been set for trial several weeks
preceding the date of hearing said oral application and
motion, and the court being fully advised in the prem-
ises, it is ordered that said oral application and
motion for postponement or continuance of trial be
and the same is overruled and denied.    It is further
ordered that this order be entered as a *nunc pro tunc*
order as of date February 7, 1916, same being the date
said oral application and motion was heard, deter-
mined, and denied.'

"Dated this 30th day of March, 1916."

It will be remembered that Sanders' affidavit in sup-
port of the motion for a continuance was based upon
the ground that he had been unable to prepare for trial
because of his detention as a juror until Saturday
noon, February 5, 1916, when the cause was set for
hearing, and the trial began the following Tuesday,
the 8th of that month.    Though the case was at issue
when the motion was made an amended answer was
filed February 9, 1916, and during the trial.    Looking

at the case as thus made by the affidavit it is evident that the postponement of the trial was desired because of Sanders' inability to obtain witnesses who would substantiate the averments of his answer, yet his sworn statement in support of the motion does not name any person upon whom he relied for that purpose, nor is the substance of any testimony detailed which he had reasonable grounds to believe could be procured in his behalf.

The statute regulating applications for continuance reads:

"A motion to postpone a trial on the ground of the absence of evidence shall only be made upon affidavit showing the materiality of the evidence expected to be obtained, and what diligence has been used to procure it, and also the name and residence of the witness or witnesses. The court may also require the moving party to state upon affidavit the evidence which he expects to obtain, and if the adverse party thereupon admit that such evidence would be given, and that it be considered as actually given on the trial or offered and overruled as improper, the trial shall not be postponed. The court, when it allows the motion, may impose such conditions or terms upon the moving party as may be just": Section 115, L. O. L.

The allowance or denial of a motion to postpone the hearing of a cause is a matter within the trial court's discretion, which discrimination will not be disturbed except in case of a manifest abuse: *State* v. *Hawkins,* 18 Or. 476 (23 Pac. 475); *Lew* v. *Lucas,* 37 Or. 208 (61 Pac. 344); *State* v. *Mizis,* 48 Or. 165 (85 Pac. 611, 86 Pac. 361); *State* v. *Luper,* 49 Or. 605 (91 Pac. 444); *State* v. *Mack,* 57 Or. 565 (112 Pac. 1079); *Cole* v. *Willow River Co.,* 60 Or. 594 (117 Pac. 659, 118 Pac. 196, 1030); *North American Securities Co.* v. *Cole,* 61 Or. 1 (118 Pac. 176, 1032); *Obenchain* v. *Ransome-Crummey*

*Co.,* 69 Or. 547 (138 Pac. 1078, 139 Pac. 920) ; *Harrison*
v. *Pacific Ry. & Nav. Co.,* 72 Or. 553 (144 Pac. 91) ;
*Stevenson* v. *Sherwood,* 22 Ill. 238 (74 Am. Dec. 140,
and notes).

Though Sanders had served as a juror he had evi-
dently been discharged when his affidavit was made for
he was present at the trial of this action and testified
in his own behalf, as did other witnesses for him.   The
cause having been set for hearing several weeks, as
the court found, preceding the day appointed for that
purpose, it must be assumed in the absence of any
showing in the affidavit to the contrary that due prepa-
ration had been made for the trial.

It will be kept in mind that Sanders' affidavit states,
"I have been unable to prepare my case for trial on
Tuesday next." What preparation, if any, was re-
quired is not disclosed, and that part of the sworn dec-
laration last quoted makes the language thus employed
the affiant's conclusion of law applicable to his concep-
tion of the case rather than a statement of material
facts upon which the court was required to predicate
its determination.   The case thus made by the affidavit
does not show any abuse of discretion in denying the
motion for a postponement of the trial.

3–5. B. D. Sigler, as plaintiff's witness, who testified
that for eight years he had been assessor of Multno-
mah County, Oregon, and that for three years after the
expiration of his term of office he had been engaged in
appraising real property and had seen and examined
Sanders' land, was interrogated as follows:

"I will ask you to state whether or not you know
the fair market value or price of that property at this
time?"

The witness answered:

"I know what I think it is worth.

"Mr. Hayes (defendants' counsel) : Well, I object to any thinking.

"Q. What do you base that judgment upon?

"A. My knowledge of—

"Mr. Hayes: I object to what he bases his thinking on—he says he thinks.

"Q. What do you base that judgment on, Mr. Sigler?

"A. Why, general knowledge of the values not only there, but comparative values in other parts of the city and county.

"Q. And based upon your knowledge of values in that part of the city, I will ask you if you know the reasonable, fair market value of that property?

"A. I do.

"Q. You may tell the jury what it is.

"A. From $1,800 to $2,000 per acre.

"Q. What uses is that property best adapted to?

"A. Well, in my judgment I should say manufacturing or factory sites of some kind.

"Q. What is your judgment—

"Mr. Hayes: Wait one minute—in your judgment—do you know—your judgment is not the question—do you know what it is adaptable for?

"Mr. Hart: All a man can know or testify to is his judgment.

"The Court: That is a matter of judgment only. * *

"Q. Now, Mr. Sigler, I will ask you to state what benefits, if any, this property would derive as a factory site, from the construction of the plaintiff's railway?

"Mr. Hayes: I object to that as the witness has not shown that he is qualified to give such information.

"The Court: The objection is overruled and an exception is allowed.

"Mr. Hart: Answer the question.

"A. I wouldn't know how to put it in dollars and cents, but it appeared to me—at least I know of no factory, or factory site, that is not benefited to at least a certain extent by having two lines of transportation

that are competing.    Two competing lines of transportation.

"Q. Would you be able to estimate the amount, or say the percentage of increase in value by reason of the construction of the line of plaintiff's line of railway?

"A. No, I would not.

"Q. Now, Mr. Sigler, I will ask you to state what this property would be worth, if you know, if the plaintiff's line is constructed across it as shown on the plat, compared to what it is worth to-day without the plaintiff's line, and assuming that it is adapted to factory purposes?

"A. It is worth as much after as it is before.

"Q. Assuming that the strip taken by the plaintiff's road is 20 feet wide and 230.57 feet long, which makes a tenth of an acre, what is the reasonable market value of that strip?

"A. Two hundred dollars."

It is maintained by defendants' counsel that Sigler's testimony shows he was not qualified to express an opinion as to the value of Sanders' land, and that in permitting him to do so the court erred.    When a witness is produced as an expert, before he can be permitted to testify as such, the court must determine whether the question involved lies without the domain of common experience of men of ordinary education, and the conclusion reached upon that subject is a matter of law which is subject to review on appeal: *Nutt* v. *Southern Pac. Co.,* 25 Or. 291 (35 Pac. 653).    If the court decides that expert testimony is competent in such case, the second inquiry is whether the witness offered possesses the requisite skill, knowledge, or experience in the subject matter to give an intelligent opinion in relation thereto, which question is one of fact and must be determined by the court from a consideration of the testimony touching his qualification:

*Aldrich* v. *Columbia Ry. Co.,* 39 Or. 263 (64 Pac. 455). In *Rugenstein* v. *Ottenheimer,* 70 Or. 600 (140 Pac. 747), in discussing this subject Mr. Justice BURNETT observes:

"It is the duty and within the province of the court as a preliminary question of fact to determine whether or not a witness is qualified as an expert, to the end that he may give an opinion in evidence, and the appellate courts will not disturb the decision of the *nisi prius* tribunal, unless there is no evidence to sustain the preliminary decision of that court."

The testimony hereinbefore quoted conclusively shows that Sigler was qualified to express an opinion as to the value of Sanders' land, and even if the decision of the court thereon were subject to review, its determination was proper.

6, 7. Exceptions having been duly reserved to the action of the court it is insisted that errors were committed in refusing to give instruction requested by defendants' counsel as follows:

"1. The only question for the jury to determine in this case is, how much damage the plaintiff, the Portland & Oregon City Railway Company, shall pay to the defendant W. A. Sanders by reason of the construction of its line of railway across the premises of the defendant. 2. Defendant W. A. Sanders is entitled to receive and recover from the plaintiff for the right of way described in the complaint the reasonable value of the land taken, which consists of a strip 230.57 feet long, amounting to about one tenth of an acre, or about one lot in extent, said value to be fixed on present value of said property. 3. If you find from the evidence that the benefits which accrue to said land on account of the building of said railway thereon is equal to or in excess of the amount of damages to said property, then in that event you will find for the defendant W. A. Sanders the reasonable value of the land taken. 4. If you find from the evidence that the portion of said

property cut off from the west end thereof and lying between the right of way of the plaintiff herein and the right of way of the Southern Pacific Railway is damaged thereby, and the market value of said land is thereby depreciated in excess of the benefits received, you will find for defendant W. A. Sanders an additional sum due to the depreciation of said tract of land over the benefits received. 5. If the jury find that the portion of defendant W. A. Sanders' land cut off from the said Southern Pacific Railway by the plaintiff's right of way and lying east of said plaintiff's right of way is damaged, and the market value thereof is depreciated in excess of the benefits derived, the jury should find an additional sum for defendant W. A. Sanders equal to the excess of said damages over and above the benefits to said land by reason of the location of said railway.''

In its general charge the court said to the jury:

''In a case of this sort there are only two questions for you to determine. The first is the reasonable, market value of the strip of land taken, being one tenth of an acre in this case, about that. The second is the amount of damages to the remaining land which is caused by the taking of this strip. * * The measure of damages in this case to the defendants is the market value of the land taken, or sought to be taken by the railway company, the plaintiff, at the time of the filing this complaint. * * By the market value is merely meant the value which would be placed upon it by a person who wants to sell, but is not obliged to do so, and by another who wishes to purchase, but who is not obliged to do so. That constitutes the market value— such a value as would be arrived at by persons so situated. * * After having determined the reasonable market value of the strip of land, then you will consider whether or not the remaining land has suffered in damages, or has suffered rather in value, and the defendants consequently in damages by reason of taking the right of way. And in determining that question you are to be governed by the testimony that you have

heard on both sides, and applying to that your own judgment as men of affairs, you will find the amount of such damage, if you find there was any, and you will also consider whether or not there would be a benefit to the land by reason of this railroad going through it, as claimed by the plaintiff. And after a consideration of those questions, if you should determine that the benefits offset the damages, that is, are as great as the damages, then you will not allow the defendants anything on account of that. If you should determine that the damages, however, are greater than the benefits, if you find there were benefits, then you should allow to the defendants such a sum as will reasonably compensate him for the difference between the benefits and the damages, if you find that the damages are greater than the benefits. Adding that sum to the reasonable value upon which you arrive as to the strip of land, the total amount would constitute your verdict in this case. * * I neglected to say that the reasonable market value is taken with reference to the cash price at the time of the sale.''

The defendants' counsel took no exceptions to any of the charge.

The instructions given as to the value of the land demanded and as to the means of determining the damages inflicted upon the remainder of the premises fairly explain the rules of law applicable to and covering a case of this kind: 10 R. C. L. 128, 153, 158. The author of the text-book cited, at page 153 thereof, says:

"The entire parcel is considered as a whole, and the inquiry is, how much has the particular public improvement decreased the fair market value of the property, taking into consideration the use for which the land was taken, and all the reasonably probable effects of its devotion to that use.''

Another text-writer remarks:

"That the land owner is entitled not only to compensation for land actually taken, but also to damages for

direct injuries to the rest of the tract resulting from the taking and using a part for public purposes, is settled beyond question. But it is often a matter of difficulty in cases where a part of a tract is taken, to determine what is a distinct tract. To entitle an owner to recover damages to the whole tract when a part of his lands has been taken, there must have been a unity of contiguous parcels. The land must have been together; all of it must have been used as a single tract'': 10 Am. & Eng. Enc. Law (2 ed.), 1165.

The testimony shows that Sanders' land, though there is erected thereon a small building for a factory, is used as an entire tract for garden and leased by him for that purpose. The defendants' fourth and fifth requests for instructions would have divided the whole tract into two parts and apportioned the damages separately where the injury was inflicted upon the entire premises. If this method had been adopted, it is possible that one part of Sanders' land might have been benefited by constructing and operating the railway to an extent exceeding the damages resulting to that portion, and yet no credit for the excess would have been deducted from the damages inflicted upon the other part. No error was committed in refusing to charge the jury as requested.

8, 9. It is contended that an error was committed in denying a motion to set aside the verdict and grant a new trial, on the ground that a snowstorm which prevailed in Portland, Oregon, from January 31, 1916, until the seventh day of the next month, rendered street-car traffic impossible, broke telephone and telegraph wires, prevented Sanders from reaching his home for four days, hindered him from notifying his witnesses and getting them to the place of trial, and precluded him from making the necessary preparation for the hearing of his cause, which inclemency of the weather,

coupled with Sanders' detention upon the jury were conditions which no ordinary prudence could have guarded against. The reasons thus given are set forth in Sanders' supplemental affidavit, which also states that newly discovered evidence material to the cause of the defense had been obtained which could not have been produced at the trial. This affidavit does not give the name of a witness whose attendance could not have been procured or state the substance of any additional testimony that it was reasonably expected would be given at a new trial.

Sanders and his wife having retained other counsel an amended motion to set aside the verdict and to grant a new trial was filed setting forth the reasons assigned in the former motion and also the grounds prescribed by statute for the special relief invoked: Section 174, L. O. L. Sanders filed another supplemental affidavit, but it contains no further statement of material facts than are set forth in his former affidavit. The affidavits of Michael Reuter, G. P. Eisman, and L. S. Winters, in support of the amended motion for a new trial, severally state, in effect, that each affiant is acquainted with Sanders' land; that the reasonable market value thereof as given by the different persons is from $3,200 to $6,000 an acre; that the value of the land taken is from $500 to $700; and that the damages which will be inflicted upon the premises is from $3,200 to $6,000. Neither of these affidavits states that if a new trial were granted the affiant would appear as a witness and testify as set forth in his sworn statement:

"In addition to a showing as to the nature and character of the desired evidence the application must further show some probability of producing the absent

witness or testimony should the continuance be granted": 9 Cyc. 140.

To the same effect, see, also, *State* v. *O'Neil,* 13 Or. 183, 185 (9 Pac. 284); *State* v. *Mack,* 57 Or. 565, 568 (112 Pac. 1079); *Stevenson* v. *Sherwood,* 22 Ill. 238 (74 Am. Dec. 140, 146).

"The refusal to grant a continuance because of the absence of a witness is not prejudicial where his evidence would have been merely cumulative": 4 Ency. Pl. & Pr. 852.

The statements contained in the affidavits of Reuter, Eisman, and Winters show that if each was to appear as a witness at a new trial, his testimony would be merely cumulative, for Sanders and his witnesses severally testified in relation to the same subject matter. The showing thus made to set aside the verdict and grant a new trial was insufficient for that purpose, and in denying the motion interposed for that purpose no abuse of discretion is manifest.

It follows that the judgment should be affirmed, and it is so ordered.      Affirmed.   Rehearing Denied.

Mr. Chief Justice McBride, Mr. Justice McCamant and Mr. Justice Harris concur; Mr. Justice Bean taking no part in the consideration of this case.